**GENERAL RADIO COMPANY,**
Plaintiff-Appellee,

v.

**KEPCO, INC., Defendant-Appellant.**

**No. 24, Docket 34500.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1970.

Decided Nov. 27, 1970.

Joseph R. McPhee, Jr., Garden City, N. Y. (Andrew Perl, New York City, on the brief), for defendant-appellant.

Robert H. Rines, Boston, Mass. (Rines & Rines, Boston, Mass., Julius Foster, New York City, on the brief), for plaintiff-appellee.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York, holding plaintiff's patent 2,942,172 valid and infringed by defendant's line of power supplies.

The plaintiff, a Massachusetts corporation with its principal place of business in West Concord, Massachusetts, is engaged in the manufacture and marketing of electronic apparatus.

The defendant, Kepco, Inc., is a New York corporation having its principal place of business and its manufacturing facilities in the Eastern District of New York. During the period in question, the defendant specialized in the production of a line of regulated power supplies and in 1960–68 was one of the best known sources of power supplies. After Kepco introduced power supplies similar to the plaintiff's, plaintiff sued for infringement of the patent in suit. Defendant answered, asserting the defenses of invalidity and noninfringement. From the court's finding of validity and infringement, the defendant appeals. We agree with the defendant and reverse.

Plaintiff's patent was issued on June 21, 1960 to Malcolm C. Holtje, an employee of General Radio, and assigned to the plaintiff. The function of the patented device referred to as a power supply is to convert alternating current, the

kind normally supplied by public utilities, to low voltage direct current, which is useful in a wide range of electronic equipment. The device seeks to maintain the output dc voltage constant in magnitude even though fluctuations may occur in the ac voltage or in the equipment to which the dc voltage is supplied.

The patented power supply has three main parts, a rectifier stage and two regulator stages. The invention claimed by plaintiff is the combination, in a new way, of these stages, each in itself previously well known.

The details of the patent are fully described in the findings of the district court. The first stage of the power supply consists essentially of a transformer for increasing the magnitude of the ac voltage, rectifier tubes for converting the ac voltage to unregulated dc voltage and a capacitor, called an energy storing device, which serves to reduce the fluctuations in the dc voltage. The next stage, between the capacitor and the regulated dc output, includes a vacuum tube in a circuit known as "a series pass-element," the function of which is to keep the dc voltage output constant in magnitude. The third stage controls the voltage across the vacuum tube of the second stage by feeding back the fluctuations in that stage to the rectifier tubes in the first stage.

The relevant prior art includes patent No. 2,511,850, issued to Hoag more than five years before the Holtje application was filed, and patent No. 2,850,680 issued to Woll antedating the Holtje patent by about two years. Hoag describes a rectifier stage like Holtje's and a series-pass element serving the same function as the series-pass element in the patent in suit. In combination with these, there is, as in Holtje's patent, an additional regulating circuit which samples the voltage variations across the pass-element to control the amount of the ac voltage applied to the rectifier tubes in order to control, in turn, the voltage across the vacuum tube of the series pass-element.

The only difference between Hoag and Holtje is that Hoag applies his feedback control to the ac input of the transformer while Holtje applies it to the rectifier tubes. It appears to us that the patent examiner was right when he said:

"[W]hether the feedback means are used to control the output of a voltage controller or to control the grids and thus the firing angle of the switching means as in Holtje would not be deemed invention since they would be fully equivalent to each other in their operation and results."

But even if the difference in the point of application of the feedback control were considered sufficient to constitute invention, the Woll patent, while differing in certain other respects, shows that control applied, as in Holtje, to the rectifier stage. The main difference between the two patents is that in Woll a shunt-regulator is used rather than a series regulator in Holtje. Holtje shows a shunt-regulator in his application and states that his invention applies both to shunt and series regulators. In testimony at trial, Holtje admitted that the choice of a series or shunt regulator is purely a question of engineering.

Both Woll and Holtje directed their efforts toward solving the problem of energy dissipation in the series-regulator in regulated power supplies. Woll considered his circuit as an improvement on the Holtje patent, and described his improvement as follows:

"While it is possible to regulate the voltage output of a thyratron rectifier by means of variable resistance series regulator tube, connected between the source of unregulated voltage and the positive output terminal of the power supply, the amount of current that may be drawn from the power supply is limited by the current carrying capacity of the variable resistance series tube."

If the shunt regulator tube of Woll is replaced with a series-regulator tube, the Woll patent describes Holtje in every significant detail. The fact that the se-

ries-regulator was not specifically claimed by Woll is not determinative, for the device was disclosed in the specification and is thus public property. Miller v. Brass Co., 104 U.S. 350, 352, 26 L.Ed. 783 (1882).

It is agreed that all of the elements in the patent in controversy had long been known in the art, but it is asserted that they are combined in such a way as to merit the term invention. To be upheld the patent must meet the test of nonobviousness for combination patents set forth in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), interpreting § 103 of the Patent Act of 1952, 35 U.S.C. § 103 (1964). The statute provides that no patent shall issue where "the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (1964).

One of the patents examined in Graham v. John Deere, *supra,* was for a new combination of old elements in a pump sprayer, the kind used on top of window-cleaner bottles. Even though the combination there was "the first commercially successful" pump of its kind and even though the lower court found the device to be a "unique combination of * * * old features [solving] problems which for years beset the insecticide industry," 383 U.S. at 29–30, 86 S.Ct. at 699–700, the Court found the device was anticipated in the prior art. The Holtje patent is a "new combination" of a similar kind.

The patent in suit is invalid in view of the teachings in the patent to Hoag, for any material in the patent in suit would be fully obvious to one skilled in the art familiar with Hoag and thus falls within the provisions of 35 U.S.C. § 103. The Supreme Court has said: "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). Applying that test, the combination of old elements here does not meet the test of invention required for patentability.

Since we have determined that the patent in suit is invalid, we need not discuss the claim that the patent was infringed.

Reversed.