**SOUTHWEST PRODUCTS COMPANY, Plaintiff-Appellant,**

v.

**The HEIM UNIVERSAL CORPORATION, Defendant-Appellee.**

**Nos. 737, 738, Docket 34451, 35448.**

United States Court of Appeals, Second Circuit.

Argued April 21, 1971.

Decided May 27, 1971.

Frank E. Mauritz, Los Angeles, Cal. (Lyon & Lyon, Los Angeles, Cal.), F. Eugene Davis, IV, Bridgeport, Conn. (Mattern, Ware & Davis, Bridgeport, Conn.), of counsel, for appellant.

Stephen B. Judlowe, New York City (Sandoe, Hopgood & Calimafde, New York City), John R. Bronaugh, Pittsburgh, Pa. and Lawrence Iannotti, New Haven, Conn., of counsel, for appellee.

Before FRIENDLY, Chief Judge and SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

These are two consolidated appeals from summary judgment for defendant in an action for patent infringement and from order denying enlargement of the record on appeal in the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge.* We find no error and affirm the judgment and order.

The patents in suit, held invalid for lack of invention under 35 U.S.C. § 103,[1] are Potter method patent U. S. Patent No. 2,724,172 and Potter article patent U. S. Patent No. 2,626,841, for forming a self-aligning bearing.[2] Essentially, the patents portray the formation of a bearing of the rod-end type consisting of a ball member pierced for the rod, the ball member being placed within a race member of metal softer

---

1. 35 U.S.C. § 103:

Conditions for patentability; non-obvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made. July 19, 1952, c. 950, § 1, 66 Stat. 798.

2. The claims of the product Patent No. 2,626,841 are as follows:
1. A self-aligning bearing construction involving inner and outer bearing members, said inner bearing member compris-

ing a bearing ball having a spherical bearing surface and an axially disposed bore for receiving a shaft, a non-ferrous malleable metal single piece outer bearing race member having a spherical socket corresponding in shape to the spherical inner bearing member and having parallel radial end walls, said outer race member being stressed such that the metal adjacent the inner peripheral surface area is compressed and the metal adjacent the outer peripheral surface is under a stress tension to form an unstretchable peripheral area which, when subjected to a rolling pressure, will cause the metal adjacent the inner peripheral surface to expand the ends of said outer bearing member in a direction away from the axis of the self-aligning bearing.

2. A self-aligning bearing construction involving inner and outer bearing members, said inner bearing member comprising a bearing ball having a spherical bearing surface, a malleable single piece outer bearing race member having a spherical socket corresponding in shape to the spherical inner bearing member, said outer race member being stressed such that the metal adjacent the inner peripheral surface area is compressed and the metal adjacent the outer peripheral surface is tensioned.

The claims of the method patent No. 2,-724,172 are as follows:

1. The method of forming a self-aligning bearing having a bearing ball and a relatively soft, ductile metal bearing race, said ball and race being formed with corresponding curved surfaces therebetween, comprising: assembling said ball in an annular blank having an inner cylindrical surface substantially corresponding in diameter with that of the bearing ball and having opposite end portions, compressing said end portions inwardly in intimate and direct contact with said ball to deform the cylindrical blank and place the same under a stress with the outer periphery stretched and the inner periphery under compression such that said blank will conform and produce a binding engagement around the curved surface of said ball, and finally compressing the median portion of the bearing race by pressure applied through rolling contact relieving some of the compression stress in the metal adjacent the inner periphery of said blank and elongating the bearing race evenly towards its opposite ends and separating evenly the bearing surfaces between the bearing ball and bear-

ing race by an amount sufficient to permit smooth rotation therebetween but still confine said ball within said race.

2. The method of forming a self-aligning bearing having a bearing ball of hard material and a spherical bearing race of relatively soft, ductile material in which said ball is retained and journaled, comprising: assembling said ball in an annular bearing race blank having an inner cylindrical surface substantially corresponding in diameter with the diameter of the ball and having oppositely disposed radially converging ends, compressing said converging ends inwardly in intimate and direct contact with said ball to deform the cylindrical blank and place the same under a stress such that the outer periphery will be placed under a stretch tension and the inner periphery will be compressed to conform evenly with the perimeter of said ball and produce a longitudinal curved perimeter, and finally rolling the median portion between the ends of the bearing race inwardly under sufficient pressure relieving some of the compressive stress in the inner periphery of said blank and elongating the bearing race evenly to permit smooth rotation between said ball and bearing race but still confine said ball within said race.

3. In the method of forming a self-aligning bearing having a bearing ball and a spherical bearing race formed from a race blank, the steps comprising: coining said race blank around said ball in intimate and direct contact with said ball to produce a binding action between said ball and race blank such that the outer periphery of the race blank is placed under a stretch tension and the inner periphery is compressed to conform evenly with the perimeter of the ball and to produce a longitudinally curved spherical perimeter, and then rolling the conformed race blank under sufficient pressure to relieve some of the compressive stresses in the inner periphery of said blank to elongate the bearing race evenly and permit smooth rotation between said ball and said bearing race but still confine said ball within said race.

4. The method of forming a self-aligning bearing having a bearing ball and a relatively soft, ductile metal bearing race, said ball and race being formed with corresponding curved surfaces therebetween, comprising: assembling said ball in an annular blank having an inner cylindrical surface substantially corresponding in diameter with that of the bearing ball and having opposite end portions, compressing said end por-

than the ball, large enough freely to receive the ball, the race member then being deformed by pressure using the ball as a die so that the race's outer edges enfold the ball and keep it confined within the race. The pressure freezes the race upon the ball which is then freed for motion within the race by rolling pressure such as successive blows by an air hammer on a tool applied to the periphery of the race. The patents in suit were held invalid in Aetna Steel Products Corp. v. Southwest Products Co., 282 F.2d 323 (9 Cir.1960), cert. denied, 365 U.S. 845, 81 S.Ct. 804, 5 L.Ed.2d 810 (1961). The file history of the patents is detailed in the *Aetna* opinion. Defenses of estoppel and laches were pleaded, based on the *Aetna* case and the delay after *Aetna* in bringing the action at bar, but the court found it unnecessary to reach these questions, granting summary judgment on the merits. The court did, however, rely heavily on the reasoning of Judge Lindberg writing for the Ninth Circuit in the *Aetna* case.

Appellant contends that it was error for the court to consider the opinion of the court of appeals in *Aetna* without amplifying the record on the motion to include the findings of the trial court in the *Aetna* case.

Whether or not this would ever be required or even proper, plainly it was not necessary here, where the judgment of the district court in *Aetna* was reversed and the patents held invalid as a matter of law. The order denying post-judgment amplification of the record is therefore affirmed.

Moreover, while Judge Blumenfeld found the Ninth Circuit's reasoning persuasive, he did consider the question of the validity of the patents independently on the merits on the showing before him and found them invalid for lack of invention over the prior art. In this he was correct. Prior patents, particularly Chambers Patent No. 2,382,773 and Fiegel Patent No. 1,693,748 had similar

tions inwardly in intimate and direct contact with said ball to deform the cylindrical blank and place the same under a stress with the outer periphery stretched and the inner periphery under compression such that said blank will conform and produce a binding engagement around the curved surface of said ball, and finally compressing the median portion of the bearing race by pressure applied radially inwardly thereto relieving some of the compression stress in the metal adjacent the inner periphery of said blank and elongating the bearing race evenly towards its opposite ends and separating evenly the bearing surfaces between the bearing ball and bearing race by an amount sufficient to permit smooth rotation therebetween but still confine said ball within said race.

5. The method of claim 4 wherein said blank is initially formed with annular end surfaces of frusto-conical configuration such that pressing said opposite end portions of said blank inwardly into contact with said ball causes said annular end surfaces to become substantially parallel planar surfaces.

6. In the method for forming a self-aligning bearing having a bearing ball and a spherical bearing race formed from a race blank, the steps comprising: coining said race blank around said ball in intimate and direct contact with said ball to produce a binding action between said ball and race blank such that the outer periphery of the race blank is placed under a stretch tension and the inner periphery is compressed to conform evenly with the perimeter of the ball and to produce a longitudinally curved spherical perimeter, and then applying sufficient pressure radially inwardly to said race blank to relieve some of the compressive stresses in the inner periphery of said blank and elongating the bearing race evenly an amount sufficient to permit smooth rotation between said ball and said bearing race but still confine said ball within said race.

7. The method of claim 6 wherein said blank is initially formed with opposite end portions, each having an annular end surface of frusto-conical configuration such that coining said opposite end portions of said blank inwardly into contact with said ball causes said annular end surfaces to become substantially parallel planar surfaces.

ball bearing construction, both using the ball as a die and deforming the race as in Potter, although they did not specifically teach the freezing and subsequent freeing. Deforming the outer race on the ball by the use of dies was at least as old as Skillman No. 1,793,874 (1931). The method of freeing by applying rolling pressure is also old. Appellant attempts to distinguish Heim U. S. Patent No. 2,476,728 on this issue because of the so-called "wedges"—the bearing rings 14 and 15 of fig. 4 of Heim—but the method of loosening does not depend on the presence or absence of the wedges. Since each of these steps was old in the art at issue, the bearing art, we agree with the finding that the combination would have been obvious to a mechanic skilled in the art. Appellant's contentions based on the distortions of the metal in the race member were properly rejected as mere scientific explanation of what occurs when Potter and earlier patents are practiced.

Estoppel was not relied on by the trial court. In fact the defendant in that court apparently conceded that in view of the line of cases stemming from Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936) collateral estoppel was not applicable to cases involving patent validity. Since argument in this case, of course, the *Triplett* rule, based on lack of mutuality has been abandoned in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, et al., 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, (1971). There is no indication in the record before us that appellant did not have in the *Aetna* case "a fair opportunity procedurally, substantively and evidentially to pursue his claim * * *." *Id.* p. 333, 91 S.Ct. p. 1445. Reliance on *Aetna* might therefore well be conclusive here. But we find it unnecessary to base our affirmance on estoppel, since we find no error in the ruling on the merits. The order and judgment appealed from are affirmed.