Alex Jacob **ROSENBERG**, Plaintiff,

v.

**STANDARD FOOD PRODUCTS CORPORATION**, Defendant.

No. 68–C–530.

United States District Court,
E. D. New York.

Sept. 13, 1971.

Wyatt, Gerber & Shoup, New York City, for plaintiff; Eliot S. Gerber, New York City, of counsel.

Marshall G. Kaplan, Brooklyn, N. Y., for defendant.

BARTELS, District Judge.

Plaintiff Rosenberg, the owner of a patent, brings this suit against Standard Food Products Corporation ("Standard"), a wholesale liquor dealer, for infringement.[1]

The patent in question (United States Patent 3,304,371) was filed on September 25, 1963 and granted on February 14, 1967. The claimed invention is an "Information Processing System" which, in essence, outlines a method for recording information from incoming telephone calls, transferring the information to punched cards, and processing the cards through a computer. The system was devised in order to expedite the processing of telephone orders made by outside salesmen by reducing the number of telephone answering personnel and eliminating excessive conversation between such personnel and the caller, thus freeing telephone lines more quickly during peak ordering periods. According to the pat-

---

1. In the pretrial order filed herein, plaintiff abandoned his claim of unfair competition and appropriation of trade secrets subsequent to the issuance of the patent. At the trial the court received the impression that plaintiff also abandoned such claim for the period prior to the issuance of the patent. However, in case there is any doubt about such abandonment, the court finds that plaintiff has failed to prove such claims.

ent, the system operates essentially as follows:

Step 1. A salesman desiring to place an order with a company dials a specific telephone number;

Step 2. A "switching device" (located at a telephone company facility) connects the caller to one of several unoccupied "lines" associated with that number. Thus, if any lines are busy, the device will connect the caller with a vacant line;

Step 3. Each line is connected to a separate tape recording machine. Upon connection with a line, the caller may receive a pre-recorded announcement, in which he is referred to by a code number, instructing him to dial another number or announcing information concerning availability of stock or other information relevant to the solicitation or placement of orders;

Step 4. After the announcement is completed, the caller dictates his order to the recording machine, referring to himself, the nature of the goods sold, the quantity of goods ordered, etc., all by reference to a pre-determined numerical code;

Step 5. The recorded orders are periodically played back through earphones to a key-punch operator who transfers the coded information to punched cards;

Step 6. At this point, two alternative steps may occur.

(a) The punched cards may be fed by someone directly to a computer or other machine for processing punched cards. This could only be accomplished if the computer is on the same premises as the recorders and keypunch machines. In this case, the information processing is completed.

(b) If the computer is located in an area remote from the information receiving center, the punched cards are fed first to a "read transceiver," which converts the cards to electrical impulses, then to a "signal unit" which converts the impulses to signals suitable for transmission over a telephone line, then across the telephone wires to another signal unit at the computing premises which re-converts the telephone signals to electrical impulses, and finally into a "punch-transceiver," which converts the impulses to punched cards duplicating the original cards. These cards are then fed into an appropriate computer or other punched card receiver for processing.

All of the foregoing steps through step 6(a) constitute Claim 1 of plaintiff's patent, the subject of the suit herein. Claim 2 involves essentially the same system except it employs step 6(b) in place of step 6(a). Claim 2 is not involved in the instant litigation. Appended hereto is the schematic representation of the system as affixed to the patent.

### Prior Art

Plaintiff's first witness, Jack Cohen, president of Star Liquor Wholesalers ("Star"), testified that: Prior to 1963 Star had been using a "Ramac" system, in which salesmen would telephone their orders through a manual switchboard to the order department; order clerks would take down each order on printed order forms containing a list of products with a corresponding code number for each item on the form; a code number was also assigned to each salesman and each customer; a key-punch operator would then read the form and punch IBM cards according to the proper code; the cards would then be fed into a computer for processing; Star presently uses the Rosenberg system with Rosenberg's permission. The primary differences between Star's order processing system pre-Rosenberg and the Rosenberg system were that (1) in the former system the salesmen reported their orders in words rather than in code, (2) a manual switchboard, rather than an automatic recording machine, received the calls, and (3) the orders were taken down by order clerks and not recorded on tape.

Plaintiff Rosenberg testified as to the terms of his patent and the operation of the system. He also conceded that every piece of apparatus employed in his sys-

tem and cited in the patent was known in the art and was in public use at the time of his invention. He also admitted that the patent does not describe a particular code nor require that any piece of apparatus be specially adapted to function within his system.

Ira Schattmann, Executive Vice President of Standard, testified that: As early as 1962, Standard used a "Soundscriber" recording device in connection with its receipt and processing of orders; while most of the telephoned orders were taken directly by order clerks, the switchboard would connect the caller with the Soundscriber when the order clerks were busy with other callers; the device would record the order and at a later time an order clerk would transcribe the order from the record on the Soundscriber; no computer was used at Standard at this time, although punched cards were used in conjunction with an IBM billing machine prior to 1960; Standard installed an IBM computer in 1964; the present system uses an IBM computer as well as a "Code-A-Phone" recording machine, which plays an announcement and records telephoned orders.

Defendant made no effort to rely upon any prior patents for its prior art claim except the Poylo patent, which related solely to Claim 2, not here asserted to be infringed. Its expert witness, Commander Joseph L. Richey, a long-time employee of the communications and public relations departments of American Telephone and Telegraph Company, testified that the Rosenberg patent brought out "no new factors" at the time of its filing. He stated, however, that, to his knowledge, it was the first instance where tape recorders were connected to a number of different lines with the same telephone number. He further testified that connecting an "electronic secretary" (a recording device which was introduced to commercial use in 1962 which announced a recorded message and then recorded the caller's message) to a single telephone line would have been "perfectly obvious" to somebody who knew about the telephone business. He also thought that there was nothing about connecting four such recorders to four lines that would not have been obvious to one skilled in the art.

Vincent Thompson, data processing manager at Global Frozen Foods ("Global"), testified that: As early as 1958 Global used a system in which a salesman or a customer telephoning an order would be connected by a switchboard operator to a dictaphone machine; the caller would then dictate his order in numerical code; subsequently the recorded order would be played back and a number of appropriate pre-punched cards would be drawn from a file and fed into an accounting machine ("receiver" in the Rosenberg patent) which would then print out an invoice; in 1965 the dictaphone was replaced by a Code-A-Phone, thus eliminating the necessity for the switchboard operator.

### Validity of the Patent

In order to qualify for patentability, an invention must fulfill the three criteria of novelty, usefulness and non-obviousness to one having ordinary skill in the art to which the subject of the claimed invention pertains. 35 U.S.C. §§ 101, 103; Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Defendant attacks the validity of the patent herein upon the ground that it is neither novel nor non-obvious. For the reasons set forth below, the court agrees.

At the outset, it is relevant to note that every piece of apparatus employed in plaintiff's patent is admitted to have been known to and used by the public prior to plaintiff's claimed invention. This concession is fully supported by the testimony of the various witnesses as set forth above. Moreover, each step of plaintiff's method for processing information involves no more than the ordinary functions of each piece of apparatus. Thus, the validity of the patent turns upon whether plaintiff's combination of known elements was novel and non-obvious.

■■ In passing upon the validity of the so-called "combination" patents, courts have repeatedly been cautioned to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950); General Radio Company v. Kepco, Inc., 435 F.2d 135 (2d Cir. 1970); Continental Can Company v. Old Dominion Box Co., 393 F.2d 321 (2d Cir. 1968). The court must be guided by the well known axiom that "only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., *supra*, 340 U.S. at 152, 71 S.Ct. at 130. A mere aggregation of old elements, each performing its separate and ordinary function, is not patentable as a new invention (Ansul Company v. Uniroyal, 448 F.2d 872, 2d Cir., April 29, 1971), unless the combination itself somehow produces a new or different function. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). One apparent reason for the relatively strict tests applied to combination patents is to preclude the issuance of patents which will have the effect of removing existent knowledge from the public domain or restrict free access to materials already available. Graham v. John Deere Co., *supra*, 383 U.S. at 6, 86 S.Ct. 684.

■ Applying the above standards, the patent in suit must be declared invalid. Every element in the patent was known in the prior art, and each piece of apparatus performed its ordinary and usual function. The function of the system and its product were neither new nor unexpected. The whole is in no way greater than the sum of its parts. The resultant system would have been obvious not only to one skilled in the art of processing information but also to the ordinary businessman faced with the problem of a busy manual switchboard and who had knowledge of the availability of an "electronic secretary" or like recording device.

■ In his brief, plaintiff concedes that the "inventive" quality of his system lies in the steps up to the original set of punched cards. In this connection, the only novel element of his system was the replacement of the manual switchboard and dictaphone machine, such as was used by Star pre-Rosenberg, with an "electronic secretary." But where a patent merely substitutes "one material for another and the substituted material performed in a readily predictable manner because of its well known properties that distinguish it from the formerly used material, [plaintiff] has a mere 'substitution of materials' patent which is invalid." Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp., 372 F.2d 263, 267 (2d Cir. 1967). The connection of a number of recording machines to different telephone lines was obvious.

Plaintiff attempts to avoid application of the standards relating to combination patents by characterizing his system as a "process." But such nomenclature does not add to his claim. A "process" consisting of a series of steps involving known elements is as much a "combination" as a composite apparatus. Proler Steel Corporation, Inc. v. Luria Brothers & Co., 417 F.2d 272 (9th Cir. 1969); *cf.* Southwest Products Company v. Heim Universal Corporation, 443 F.2d 621 (2d Cir. 1971). Moreover, it is misleading to characterize the patent in question as a process independent of specific apparatus, for it is the automatic recording machines attached to a number of telephone lines which distinguishes the Rosenberg system from the system used by others before Rosenberg. There is nothing new or non-obvious about the use of a code in place of words in the processing of orders.

Accordingly, in view of the invalidity of the patent, the issue of infringement need not be reached.

The foregoing opinion constitutes the court's findings of fact and conclusions of law, pursuant to Rule 52, Fed.R.Civ. Proc., 28 U.S.C.

Submit order.

Appendix B

Feb. 14, 1967     A. J. ROSENBERG     3,304,371

INFORMATION PROCESSING SYSTEM

Filed Sept. 25, 1963

INVENTOR.
ALEX J. ROSENBERG

BY

Davis, Hoxie, Faithfull & Hapgood
ATTORNEYS.

[A4445]