33 C.C.P.A. (Patents)

## In re CHRISTOPHER.
### Patent Appeals No. 5189.

Court of Customs and Patent Appeals.

June 11, 1946.

Lester F. Dittenhoefer, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the decision of the Primary Examiner rejecting, as unpatentable over the prior art, claims 10 to 15, inclusive, of an application for a patent alleging new and useful improvements in "Process and Apparatus for Making Asbestos-Cement Pipe." No appeal was taken from the rejection of the only method claim, 15, but from the rejection of the other claims this appeal was taken.

Claims 10 and 13 are illustrative and read as follows:

"10. Apparatus for extruding fibro-cement pipe, comprising a stationary tubular die, a compression chamber at the inner end of the die, said chamber tapering from its inlet end towards its outlet end, a stationary core rigidly held concentrically within the die, a rotary auger for feeding plastic fibro-cement material to the die, and rotary blades disposed between the discharge end of the auger and the inlet end of the compression chamber to direct the fibrated cementitious material longitudinally towards the die.

"13. Apparatus for extruding fibro-cement pipe, comprising a stationary tubular die, a compression chamber at the inner end of the die, said chamber tapering from its inlet end towards its outlet end, the inlet end of the chamber being from three to four times as large in area as the outlet end, a stationary core rigidly held concentrically within the die, a rotary auger for feeding plastic fibro-cement material to the die, and four equi-spaced rotary blades disposed between the discharge end of the auger and the inlet end of the compression chamber to direct the fibrated cementitious material longitudinally towards the die."

The cited references are: Merrill, 300,882, June 24, 1884; Hartman, 1,662,112, March 13, 1928; Sabine (British), 439,718, December 12, 1935; Moren, 2,025,419, December 24, 1935.

The application relates to a machine for making asbestos-cement pipe by extrusion. It is stated that the pipe is for use in conducting liquids under high pressure. The structure comprises a rigidly held stationary core concentrically placed within a stationary tubular die, a compression chamber at the inner end of the die tapering toward its outlet, and a feed screw or rotary auger for feeding the plastic material to the die. Between the inner end of the compression chamber and the discharge end thereof are rotary blades to direct the material longitudinally toward the die.

The Merrill patent relates to a drain tile machine and discloses a feed screw extruding clay material over a rotatable core fastened to the shaft of the screw, and a tapered compression chamber surrounding the core.

The Hartman patent is for an extrusion machine used in the making of bricks, hollow tile and other clay products by forcing clay and the like through a die. It discloses a feed screw and a tapered chamber between the discharge end thereof and the inner end of the outlet chamber. It also discloses blades on the shaft beyond the termination of the spiral feed.

The Sabine patent relates to a device used in the manufacture of clay sanitary pipes, chimney pots and the like by extrusion. It is substantially similar to the device of the application, the chief difference between the two structures being that the chamber surrounding the core of the patent flares toward its outer opening.

The Moren patent relates broadly to presses used in the extrusion of products made from clay, such as sewer pipes, conduits and the like. The device operates by plunger action on the clay, forcing it through a pressure chamber tapered from its inner to its outer ends and molded by passage over a cone into its final form. The cone is stationary and concentric to the body of pipe to be formed.

The examiner rejected the claims for lack of invention over the Sabine patent in view of the patents to Moren or Merrill. He also added his rejection for lack of invention over the patent to Hartman in view of the Sabine patent.

The board in its decision agreed with the reasoning of the examiner.

The Sabine patent is the primary reference and appellant contends here, as he did below, that the patent does not clearly disclose a "stationary core rigidly held concentrically within the die." Upon that contention appellant chiefly relies, although he argues that the patents of the cited prior art all relate to clay extrusion machines which were not intended nor adapted to extrude asbestos-cement pressure pipe, which he says he was the first to produce in a commercially successful machine.

■ It is quite true, as contended by appellant, that foreign patents are pertinent as prior art only by reason of what is clearly and definitely expressed in them. That they may be combined with other references to negative patentability is admitted by him.

In the structure of the Sabine patent the boss or extrusion end of the feed screw "rests," it is said, upon a center pin which is "carried by a single cross bar extending across the barrel." The pin "*assists* in supporting and locating the feed worm shaft and *may* as shown carry the cone." (Italics ours.) Appellant contends that the holding by the tribunals below; i. e., that the core in the Sabine device is stationary, is based on the assumption that it could be stationary but that it is not clearly shown in either the drawings or specification to be so. From that premise he contends that there is such lack of clarity in the Sabine patent that it may

not be properly employed as a reference. In response to a request for reconsideration the board reaffirmed the conclusion of its original decision, pointing out that the boss is said to "rest upon" the pin carried by the cross bar although not mentioned as either being rigid or secured to the boss. The expression "rest upon" convinced the board that the pin was not secured to the boss. It further pointed out that the pin "may" carry the core, stating: "It appears obvious that if rotation of the core were desired or intended, the pin * * * would have to carry the core and be rigid with the core and the boss * * * as well. If this latter arrangement is what the patentee intended it would obviously have been described or rotation of the core * * * would at least have been mentioned."

It seems to us that if the pin "may" carry the core it is not intended that it should so do, and since in our opinion it does not, the core does not revolve with the movement of the feed-screw shaft. It must of necessity be stationary.

In our opinion the Sabine patent clearly discloses all of the elements of appellant's device except that of the compression chamber, which as has been heretofore noted is disclosed in the Moren and Merrill devices.

Subsequent to the decision of the examiner, and prior to that of the board, an affidavit of the treasurer of appellant's assignee was filed. It is stated therein that patents were granted appellant in several foreign countries on the same device. Such statements, however, taking them at their full value in connection with the application here involved and the prior art, cannot lend patentability to the rejected claims.

■ Apparently appellant is the pioneer in the production of a commercially successful machine for the manufacture by extrusion of asbestos-cement pipe. However, unless we should hold that the references are from a non-analogous art, we would be unable to hold his claims patentable. There is nothing in the record to indicate that any distinction is to be made between pipes made by extrusion of clay and those made by extrusion of asbestos-

cement. Both the application and the cited references are seemingly in the hollow pipe and tile producing art.

The decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.