**KOPPERS COMPANY, INC. and Universal Corrugated Box Machinery Corporation, Plaintiffs,**

v.

**S & S CORRUGATED PAPER MACHINERY CO., INC., Defendant.**

**No. 70 C 926.**

United States District Court,
E. D. New York.

Nov. 28, 1973.

Wyatt, Gerber, Shoup by Douglas W. Wyatt, New York City, for plaintiffs.

Ostrolenk, Faber, Gerb & Soffen by Sidney Faber and Jerome M. Berliner, New York City, for defendant.

## MEMORANDUM

COSTANTINO, District Judge.

Koppers Company, Inc. and Universal Corrugated Box Machinery Corporation commenced this action on July 24, 1970 for a declaratory judgment that United States Letters Patent No. 2,988,236 issued June 13, 1961 to A. F. Shields for an invention entitled "Blank Stacking, Straightening and Delivery Device" [hereinafter referred to as Shields Patent] and assigned to defendant, S & S Corrugated Paper Machinery Co., Inc. is invalid and not infringed. Defendant counterclaimed, charging plaintiffs with infringement of its patent.

Upon agreement of all the parties, the following stipulations have been placed into the record:

(1) The only issues to be tried are the questions of validity, infringement, and enforceability of claim one of the patent in suit.

(2) In the event that the suit patent is held invalid and/or not infringed as to claim one thereof, plaintiffs are entitled to an injunction restraining defendant and all persons in active concert with defendant from asserting the patent in suit in any manner against plaintiffs or their customers in respect to the manufacture, use or sale of plaintiffs' understacking machine [hereinafter referred to as the Universal Understacker].

The court has subject matter jurisdiction pursuant to sections 2201, 2202 and 1338 of title 28 of the United States Code and venue is properly laid in this court under section 1400(b) of title 28 of the United States Code.

### Validity

The subject of the Shields Patent is an apparatus for accumulating, straightening and delivering box blanks issuing from another machine, which can be operated in synchronism with the issuing machine. Claim One of the Shields Patent reads as follows:

A stacking, straightening and delivery mechanism adopted for use with a machine for operating on box blanks, comprising, a conveyor operable in synchronism with the said machine to move said blanks in a first, or longitudinal, direction, a device above the conveyor to intercept and accumulate blanks issuing from the machine thereby forming a blank stack being fed from below, said device including a pair of plates transverse to the direction of motion of the blanks between which the blanks may be accumulated; one of the said plates abutting the trailing edge of the blanks in the stack and being periodically reciprocally movable in a longitudinal direction, a device above the conveyor to intercept and accumulate blanks issuing from the machine thereby forming a blank stack being fed from below, said device including a pair of plates transverse to the direction of motion of the blanks between which the blanks may be accumulated; one of the said plates abutting the trailing edge of the blanks in the stack and being periodically reciprocally movable in a longitudinal direction to apply a straightening force to the blanks; an opening under said plate sufficient to permit the entry of at least one blank at a time, and above the upper end of said plates, a longitudinally movable plate for periodically pushing a top portion of the stack of said blanks from the said accumulating device and means for supporting the said pusher plate so that it remains in a substantially vertical position when in contact with the said blank stack, said pusher plate being mounted for limited vertical movement relative to the means for supporting the pusher plate, said stack being fed with blanks as the movable plate is removing said top portion from the stack.

Viewed in the context of this proceeding the important features of defendant's patented device are its "novel" pusher and the synchronous movement of its elements. Synchronization is ob-

tained by coordinating all elements with the device's sole source of power—a gear driven by the issuing machine. This is accomplished by utilizing an integrated system of belts which connect all elements to the drive gear.

The specifications contained in the Shields Patent provide the following explanation of the pusher:

> The pusher plate, which operates in a predetermined synchronization with the stacking and straightening device in order to periodically deliver a stack containing a given number of blanks, is vertically slidable by means of wheels . . ., mounted to [the] pusher plate . . . which are adapted to ride on vertical rails . . . mounted to [the] support plate. . . . Thus, as [the] pusher plate delivers a pile of blanks from the machine, the stack is continually rising and because of . . . wheels riding on . . . rails the pusher plate is made to rise in response to the movements of the top of the portion of the stack not being delivered. Thus the pusher plate does not interfere with the increasing stack even during the delivery period.

The supporting plate of the pusher is mounted to two chains which provide means for driving the pusher plate and for sustaining it in a substantially vertical position throughout its operation. Power is provided to the pusher through the interaction of a series of gears coordinated with the drive gear. The gears, each of which comprise a different ratio, provide means for selecting the speed at which the pusher plate is to move. They are secured to a shaft which engages a series of sprocket wheels connected to the two chains. Once the drive gear is activated the chains are put in motion. The chains will continue to move as long as the drive gear is operating. Consequently, while the defendant's apparatus is in operation, the pusher mechanism continually moves

through its path; only its speed is subject to change.

It cannot be denied that all elements of defendant's patented device are well known mechanical expedients. The defendant has not seriously disputed this conclusion, but rather has urged that Claim One is a patentable combination that was novel, useful and non-obvious at the time the Shields patent was obtained.

Even if it is assumed that defendant's invention was novel and useful, a question remains as to whether the combination of elements manifested by Claim One meets the statutory standard of non-obviousness, 35 U.S.C. § 103 (1971); Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965); Cuno Eng'r Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); General Radio Co. v. Kepco, Inc., 435 F. 2d 135 (2d Cir. 1970); Continental Can Co., Inc. v. Old Dominion Box Co., Inc., 393 F.2d 321 (2d Cir. 1968); Dempster Bros., Inc. v. Buffalo Metal Container Corp., 352 F.2d 420 (2d Cir. 1965); Zoomar, Inc. v. Paillard Products, Inc., 258 F.2d 527 (2d Cir. 1958).

Section 103 of the Patent Act sets forth the following standard:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Addressing itself to the problems posed by section 103 the Supreme Court in Graham v. John Deere Co., 383 U.S.

1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965), offered the following guidance:

> While the ultimate question of patent validity is one of law . . . the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. *Id.* at 17–18, 86 S.Ct. at 694.

In an attempt to prove that Claim One was *obvious* the plaintiffs have offered into evidence twenty-three prior art references. Sixteen of these references were also cited by the Examiner and are included in the file wrapper of the patent suit. The defendant has countered by arguing that the prior art did not anticipate its invention as none of the prior art references cited by either the Patent Office Examiner or the plaintiffs indicate an apparatus combining all elements found in Claim One. Moreover, the defendant asserts that most of the prior art offered into evidence is irrelevant in that it applies to fields unrelated to the art of "corrugated box machine making."

Defendant's position is untenable. First, the prior art references in evidence, especially those cited in the file wrapper of the patent suit, preclude the defendant from claiming a combination patent. Second, the defendant urges an unnecessarily restrictive standard for determining the relevant prior art.

The prior art references cited by the Examiner are of major importance in this proceeding because in the course of obtaining its patent the patentee when confronted by the prior art was forced to accept certain limitations. It has long been settled that an invention is to be construed not only in light of the claims made, but also with reference to the file wrapper or prosecution history in the Patent Office. Graham v. John Deere Co., *supra* at 33, 86 S.Ct. 684; Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–221, 61 S. Ct. 235, 85 L.Ed. 132 (1940). The claims which are allowed should be read and interpreted with reference to those which are rejected and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be broadened to cover that which was previously by limitation eliminated from the patent. Graham v. John Deere Co., *supra*; Schriber-Schroth Co. v. Cleveland Trust Co., *supra*.

Reference to the file wrapper history of Claim One indicates that the patentee accepted severe limitations on the scope of the patent granted. The file wrapper reveals that Claim One had been rejected four times prior to being allowed. In its original form Claim One merely described the various devices employed in defendant's apparatus. The claim was rejected for being indefinite. Shortly thereafter the patentee resubmitted the claim in substantially the same form. The Examiner again rejected the claim "as being drawn to a device, the operation of which is inadequately disclosed." In addition, the Examiner found that the device was unpatentable in view of the prior art. The Examiner's findings made clear that in light of Greenwood's patent No. 1,868,384, which shows a box blank stacker that operates in the same manner as defendant's apparatus, together with Binkard's patent No. 478,079 or Taylor's patent No. 739,121, both of which show the use of a jogger as a straightening device, and Hess' patent No. 2,591,259 or Chandler's patent

No. 2,672,079, both of which show the use of ejectors, no patentable combination had been made.

The Examiner took the view that in light of the disclosures found in the prior art,

no invention would be involved in making Greenwood's plate 19 capable of oscillatory movement as shown by either Taylor or Binkard, nor would invention be involved in providing Greenwood's device with an ejector as shown by either Hess or Chandler. All of these expedients are within the skill of the average mechanic and would not produce any new or unobvious results.

Shortly after the second rejection, Claim One was resubmitted without any significant change. In its application the patentee argued that the prior art did not anticipate his invention.

[N]either the Taylor or Binkard oscillatory members can be combined with the Greenwood device so as to produce an oscillable plate suitable for a high speed stacking and straightening device as set forth in the claims

. . . .

The ejection means of both the Hess and Chandler patents are operated intermittently thereby making them totally unsuited for a high speed stacking device such as illustrated in the instant application. That is, a member operated intermittently under conditions of high impact loading will soon fail. Further, neither the Hess nor the Chandler ejector means is constructed so as not to interfere with the stack which is rising even as the ejecting operation is taking place. None of the other limitations relative to the pusher plate are taught or remotely suggested by the reference.

The Examiner, however, remained unpersuaded and rejected Claim One for the third time. In his remarks he made it quite clear that the basis for the rejection was that the combination of old elements did not involve any "inventive skill" as each of the mechanisms therein were "within the skill of the average mechanic and [did] not produce any new or unobvious results."

Soon thereafter the patentee once again submitted Claim One to the Patent Office. No changes were made; instead the patentee once again proffered lengthy arguments as to the non-obviousness of its invention. The Examiner refused to change his prior findings and thus made a final rejection of Claim One. In his statement the Examiner expressed the view that Claim One was indefinite in that it did not point out and distinctly claim the subject matter of the invention in accordance with 35 U. S.C. § 112 (1971).

It is not evident from the defined combination what cooperative or useful function the contact of the pusher has with the blank stack. The novelty of the invention appears to reside in the vertically movable pusher plate so that the blanks can continuously accumulate while the pusher plate is removing a top portion of the stack.

Instead of appealing the Examiner's final rejection, as it had a right to do, the patentee decided to submit an amended claim. The amendment consisted of adding the following phrase to the end of Claim One:

[S]aid pusher plate being mounted for limited vertical movement relative to the means for supporting the pusher plate, said stack being fed with blanks as the movable plate is removing said top portion from the stack.

In addition the fifth application contained the following remarks:

[T]hese claims have been amended to recite that blanks are being fed to the stack while the top portion of the stack is being removed by the pusher plate. This is accomplished by mounting the pusher plate for a limited vertical movement relative to the means for supporting the pusher plate. This limitation is not taught or suggested by any of the references cited during the course of prosecution. It is submitted that [Claim One]

. . ., as amended, now [points] out and distinctly claims the subject matter of applicant's invention in accordance with 35 U.S.C. 112.

The Examiner then allowed Claim One of the patent suit.

In light of the above history it is clear that the defendant should be precluded from asserting a combination patent. Rather the scope of the invention should be limited to the pusher element. This result is warranted by reason of the doctrine of file wrapper estoppel or in the alternative by reason of the prior art references proffered to the court.

█ Referring to the rejected versions of Claim One and that which was allowed, it is clear that the subject matter of the patent had been reduced to include only the pusher element. Graham v. John Deere Co., *supra;* International Latex Corp. v. Warner Bros. Co., 276 F. 2d 557 (2d Cir. 1960). Having accepted this limitation, the defendant should not be allowed to enlarge its claim to cover that which had been previously eliminated by amendment. International Latex Corp. v. Warner Bros. Co., *supra*; C–Thru Products, Inc. v. Uniflex, Inc., 262 F.Supp. 213 (E.D.N.Y.1966).

Furthermore, the extensive disclosures found in all the prior art references in evidence support a finding that the patented device is not a patentable combination of elements. Initially the court finds that the prior art references are pertinent and relevant to the invention in question. Burgess Cellulose Co. v. Wood.Flong Corp., 431 F.2d 505 (2d Cir. 1970); Continental Can Co., Inc. v. Old Dominion Box Co., Inc., 393 F.2d 321 (2d Cir. 1968) (Bartels, J.); Application of Shaffer, 229 F.2d 476, 43 C.C.P. A. 758 (C.C.P.A.1956); C–Thru Products, Inc. v. Uniflex, Inc., 262 F.Supp. 213 (E.D.N.Y.1966). Each one of the references disclose the use of a mechanical structure or expedient found in the patented device. The combined effect of the references is to illustrate that all the expedients found in defendant's appara-

tus were well known · and common to many dissimilar fields. Clearly then, a person skilled in the art of making and designing machinery for handling box blanks reasonably could be expected to have looked to the references for a solution of the problems the patented device attempts to solve. Burgess Cellulose Co. v. Wood Flong Corp., *supra*; Welsh Mfg. Co. v. Sunware Products Co., 236 F.2d 225 (2d Cir. 1956); Zoomar, Inc. v. Paillard Products, Inc., 152 F.Supp. 328 (S.D.N.Y.1957). .

The evidence concerning the level of the ordinary skill of a person in the art of designing and constructing machinery for handling box blanks' shows that it is quite high. Characteristically a person skilled in the art has an engineering degree, has attended graduate school, and has .worked in the field for many years. Consequently, in view of the disclosures found in the prior. art and the high level of skill in the art of designing and constructing machinery for the handling of box blanks the court concludes that defendant's device was not a patentable combination of elements.

The court has had the opportunity to study prior art references which were not considered by the Examiner. When these additional references are combined with those cited by the Examiner, it becomes quite clear that the pusher element of defendant's device was likewise an expedient within the skill of the average mechanic.

With regard to the pusher element the relevant prior art is as follows: Hess' patent No. 2,591,259; Hart's patent No. 1,344,034; Chandler's patent No. 2,672,079; Sheppard's patent No. 2,135,773; Crank's patent No. 2,607,283; and Kottman's patent No. 2,631,716. The Hess, Hart and Chandler patents, all of which were cited by the Examiner, illustrate the use of a pusher plate to remove objects from a stack. The Hess patent, issued for a billet heating furnace, discloses a device which pushes billets from the top of a rising stack of billets onto a sloping ramp. The Hart patent, issued for a mechanism to be used

for stacking shoe-soles or shoe-lifts as they are issued from a die press, discloses the use of a pushing member to remove a given number of items from the top portion of a rising stack. Similarly the Chandler patent, issued for an article handling and stacking machine, discloses the use of a pusher mechanism for removing a stack of objects.

The Sheppard patent, issued for a mechanical loader for loose materials, which was not included in the file wrapper history of the patent suit, discloses the use of a set of chains as a means of supporting a movable pusher plate. The structure is almost identical with that employed in the patented device.

■ Finally, the Crank and Kottman patents, which also were not cited by the Examiner, disclose mechanisms that employ pusher plates that are vertically movable on their support plates in order to allow the pusher plate to move up or down in relation to its underlying surface as it moves in a relatively longitudinal direction. Although these patents were issued for a mechanism used in popping corn and a mechanism used to convey loaves of bread through a cutting machine, they are relevant to the invention in question in that they show that the structure of defendant's "novel" pusher plate was commonly used in other fields. This evidence is important in light of the uncontroverted testimony of plaintiffs' expert witness that "the idea of using one plate in front of another plate loosely is a well known obvious expedient." Trial transcript at 257.

It is settled law that

where the use of a device or structure is common to many dissimilar fields, its application to a new field ordinarily involves no more than ordinary mechanical skill. Welsh Mfg. Co. v. Sunware Products Co., 236 F.2d 225, 226 (2d Cir. 1956).

Consequently, on the basis of the disclosures in the prior art and the evidence showing that the expedients used in defendant's pusher mechanism were commonly used in other fields, the court finds that its invention was anticipated by the prior art and that it would have been obvious to a person having ordinary skill in the art of designing and constructing machinery for handling box blanks. Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., *supra*; Cuno Eng'r Corp. v. Automatic Devices Corp., *supra*; Lemelson v. Topper Corp., 450 F.2d 845 (2d Cir. 1971); Dempster Bros., Inc. v. Buffalo Metal Container Corp., *supra*; Tatko Bros. Slate Co., Inc. v. Hannon, 270 F.2d 571 (2d Cir. 1959); Zoomar, Inc. v. Paillard Products, Inc., *supra;* Bostitch, Inc. v. Precision Staple Corp., 178 F.2d 332 (2d Cir. 1949).

■ The defendant places great weight on the presumption of validity attached by statute to a duly issued patent, 35 U.S.C. § 282 (1971), and the allegedly great commercial success of its invention. Faced with the strong evidence showing that the invention in question was obvious, neither the presumption of validity nor a showing of commercial success can generate enough force to breathe life into defendant's patent. The plaintiffs have clearly sustained their burden of proof. Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 539 (2d Cir. 1966); Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105–106 (2d Cir. 1962). Furthermore it must be realized that evidence of commercial success is only a secondary consideration which should be considered where the question of obviousness is close. Under the circumstances of this case, evidence of commercial success has little import. Graham v. John Deere Co., *supra*, 383 U.S. at 17–18, 86 S.Ct. 684; Continental Can Co., Inc. v. Old Dominion Box Co., Inc., *supra*, 393 F. 2d at 326.

*Infringement*

■ The defendant also claims that plaintiffs' Universal Understacker infringes upon Claim One of the Shields Patent. Assuming that Claim One was valid the question of infringement depends upon whether, when Claim One is interpreted so as to cover what is pat-

entably new in light of the specifications and the prior art, the Universal Understacker does substantially the same thing in substantially the same way. Similarity or even identity of result does not approach the quantum of evidence necessary to establish a claim of infringement. Wabash Corp. v. Ross Electric Corp., 187 F.2d 577 (2d Cir. 1951); Moto-Mower Co. v. E.C. Stearns & Co., 126 F.2d 854 (2d Cir. 1942). In the words of Judge Learned Hand:

> A patentee may indeed monopolize all the uses of his invention, but we must first learn what that invention is. It is not the idea in vacuo; the consideration for a grant is a chart which others can follow, not an intimation they must work out for themselves. If they embody the idea by quite different means, they will pay him no tribute; he gets his reward for marking the path, not for pointing to the goal. Grubman Eng'r & Mfg. Co. v. Goldberger, 47 F.2d 151, 153 (2d Cir. 1931).

Therefore, resolution of the issue of infringement will of necessity require a factual inquiry into and comparison of the mechanical means and expedients employed be the devices in question. The Universal Understacker is an underfed "inline squarer and bundle ejector" used for handling box blanks. Similar to defendant's apparatus the Universal machine employs a conveyor to feed blanks into an accumulating mechanism; its accumulating mechanism consists of two transverse plates, one of which operates as a straightening device; and it has a pusher plate which engages a top portion of stacks. Essentially defendant's claim of infringement rests upon these similarities. However, contrary to what the defendant may argue, a comparison of the two machines, their structural design and the manner in which they operate, gives rise to a finding that although they may perform similar functions they do it by quite different means.

Plaintiffs' conveyor system and accumulating devices are essentially the same as those employed in the patented apparatus, the difference being that the Universal Understacker employs a pivoting slapper while the patented apparatus has a slapper which is directly mounted to eccentrics.

However, the pusher mechanism of the two machines are dissimilar in both design and manner of operation. The pusher element in the Universal Understacker is mounted to an air operated piston system. The piston is activated by means of electrical impulses emitted from a photo-electric counter mechanism. Under this system the pusher remains inoperative until a certain predetermined number of box blanks passes before the photo-electric eye of the counter mechanism.

The forward stroke of the Universal pusher is rapid, and thus does not engage the top portion of the stack while blanks are entering it from below. Additionally, the Universal pusher does not effect the removal of the bundle of box blanks but rather displaces the bundle approximately five inches so that the blanks are engaged by a series of vertical drive rollers which then pull the displaced blanks off the stack. It is the combined operation of the rollers and pusher mechanism which remove the blanks from the top of the stack.

Comparing the two devices the following distinguishing features are discerned. The Universal Understacker does not have the synchronous movement of all its elements. The operation of its ejector-removal system is independent of the movement of the conveyor and straightening mechanism of the machine. Second, the Universal pusher mechanism is not designed to be in continuous movement but rather is designed for intermittent operation. Third, the number of blanks removed from the top portion of the stacks in the Universal machine is not controlled by the speed of the pusher or the speed of the conveyor. The velocity of the stroke of the pusher is constant and operates independently from the conveyor. The number of blanks removed is determined by means

of the photo-electric counter system. Finally, the Universal Understacker utilizes a series of vertical drive rollers to effect the removal of the bundle of box blanks from the stack. Its pusher mechanism does not move across the total distance of the stack, but merely displaces the bundle for a distance of approximately five inches.

With these differences in mind the court must now inquire into the breadth of defendant's patent. In so doing reference must be made to the specifications, the prior art and the file wrapper history of the patent suit. International Latex Corp. v. Warner Bros. Co., *supra*. A patentee should never be allowed to recapture that which he surrendered by amendments. Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942). Similarly a patentee should not be permitted to claim that which was already disclosed in the prior art. Moto-Mower Co. v. E. C. Stearns & Co., *supra*, 126 F.2d at 855–856.

■ To prove his action for infringement the defendant has relied heavily upon the similar functions performed by the two machines. A functional analysis of the two machines, however, is inappropriate. Rather the issue of infringement should be resolved on the basis of the mechanical means employed by the devices being compared. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419–422, 28 S.Ct. 748, 52 L.Ed. 1122 (1908).

The defendant also relies upon the doctrine of equivalents and urges that though the Universal Understacker may employ different means, the differences are so insignificant as to require that the means employed in the Universal Understacker should be treated as the equivalents of those employed in the patented device. However, reference to the structural design of the two machines and the manner in which they perform their tasks discloses that there are significant differences between the two machines. In light of the file wrapper history and the state of the prior art at the time the patent was issued the court would be hard put to hold that the different means employed by the Universal machine were equivalent to those employed in Claim One of the patent suit. At best defendant's invention was extremely narrow. His position was not enhanced by the difficulties he encountered in the process of obtaining the patent. Consequently, the court holds that the Universal Understacker, which employs a complicated ejector-removal system, does not infringe upon Claim One of the Shields Patent. The Triax Co. v. Hartman Metal Fabricators, Inc., 479 F.2d 951 (Decided May 31, 1973, 2d Cir.); International Latex Corp. v. Warner Bros. Co., *supra*, 276 F.2d at 563–565.

The foregoing opinion shall constitute the court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

Settle judgment on notice.