**KOPPERS COMPANY, INC., and Universal Corrugated Box Machinery Corporation, Plaintiffs-Appellees,**

v.

**S&S CORRUGATED PAPER MACHINERY CO., INC., Defendant-Appellant.**

**No. 108, Docket 74–1496.**

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1975.

Decided May 1, 1975.

---

Jerome M. Berliner, New York City (Ostrolenk, Faber, Gerb & Soffen and Robert C. Faber, New York City, on the brief), for defendant-appellant.

Douglas W. Wyatt, New York City (Wyatt, Gerber & Shoup, Olin E. Williams, Pittsburgh, Pa., and Boyce C. Dent, Baltimore, Md., of counsel), for plaintiffs-appellees.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

The questions raised on this appeal are (1) the validity of United States Letters Patent No. 2,988,236, issued June 13, 1961 for an invention now used in the corrugated box manufacturing industry, called a "Blank Stacking, Straightening and Delivery Device," to A. F. Shields [the Shields Patent] and assigned to appellant S&S Corrugated Paper Machinery Co., Inc. ("S&S"), and (2) alleged infringement of Claim One of the Shields Patent by a device manufactured and distributed by appellee Koppers Co., Inc. and its subsidiary Universal Corrugated Box Machinery Co. (hereinafter, collectively, "Koppers"). In a decision reported at 367 F.Supp. 55 (E.D.N.Y. 1973), Judge Costantino granted plaintiff Koppers a declaratory judgment that Claim One of the Shields Patent was invalid as obvious under prior art,[1] and denied the defendant's counterclaim that the Koppers device infringed upon Claim One of the Shields Patent, holding that the Koppers device was mechanically dissimilar to the Shields device. We would affirm the result on Judge Costantino's reasoned opinion below but for the fact that he failed to consider the patent in suit as a combination patent because of an alleged file wrapper estoppel. We think he erred in holding that the file wrapper history estopped Shields from claiming a combination patent rather than an improvement patent. The error, however, does not lead to a different result; treating the Shields patent as a combination patent, we affirm for the reasons stated below.

1. *The Facts*

The Shields Patent was designed to improve processing of corrugated box blanks, which are flat sheets of cardboard pre-cut and glued so as to be foldable into cardboard boxes. Shields' invention combines and synchronizes stacking, straightening and delivery by synthesizing methods previously used in the cardboard box industry and in other industries.

The Shields device stacks box blanks by means of "underfeeding," a method by which single blanks are fed to the bottom of a stack as they come off a conveyor belt. The particular utility of underfeeding in handling box blanks is that it facilitates proper setting of tacky glue. The weight of the stack accumulating above each underfed box blank prevents the glue joints from opening

---

1. The parties have stipulated that only Claim One of the Shields patent is at issue. 367 F.Supp. at 56.

and maintains sufficient pressure for complete gluing of the boxes.

In the Shields device, as a box blank with unset glue enters the stack from below, it is stopped by a rigid plate which fixes the front edge of the stack. Then a movable "slapper plate" repeatedly slaps the boxes' back edges by periodic reciprocal movement to align the box blanks and to form a uniform rear edge of the stack. The slapping straightens any misaligned box blanks so that the unset glue dries properly (the blanks being held fast from above by the weight of the rising stack) with the consequence that the boxes may ultimately be folded accurately.

The Shields device completes its function by periodically delivering a determined number of blanks from the top of the stack onto the next device in the manufacturing process. This delivery is accomplished by means of a pusher element, which is suspended above the rising stack of box blanks by a set of bicycle-type chains. The pusher unit is connected mechanically to the rest of the device by means of a series of gears, which serve to synchronize its periodic rotation with the functioning of the device's other elements so that a predetermined number of blanks will be pushed off the stack each time. The box blanks are actually pushed off the stack by a "pusher plate," which sweeps relatively slowly over the entire width of the stack as it pushes. The pusher plate is adjacent to a second plate which is, in turn, attached rigidly to the chain suspension unit. These two plates are joined by two rails and four wheels which permit the pusher plate to move vertically, but not horizontally, relative to the rigid plate, its means of support. The purpose of such vertical movement of the pusher plate is to permit it to be pushed up by the stack of box blanks rising underneath it, so as not to damage the top box on the stack or require a stoppage of blank accumulation from underneath while a portion of the stack is being removed from the top.

## 2. Scope of the Patent

There is no question that Shields' invention has great utility in the corrugated box manufacturing industry, as is evidenced by its commercial success over the more than 18 years which have passed since the original filing with the Patent Office on December 4, 1956; and Judge Costantino assumed arguendo that the Shields Patent was "novel and useful" within the meaning of Sections 101 and 102(a) of the Patent Law, 35 U.S.C. §§ 101, 102(a). However, the problem which plagued Shields during the course of his patent application, which required five submissions before the patent officer mailed a notice of allowance on October 26, 1960, is whether the device is sufficiently nonobvious to be patentable.

The issue, as phrased by 35 U.S.C. § 103 is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."

The court below found that the "combination of elements" manifested by Claim One failed to meet the statutory standard of nonobviousness established by 35 U.S.C. § 103. Despite its reference to the "combination of elements," however, it did not consider the patent to be a combination patent, stating that S&S should be "precluded from asserting a combination patent," 367 F.Supp. at 60, relying principally for that conclusion on the file wrapper history of the patent and its own finding that this history established "that the subject matter of the patent had been reduced to include only the pusher element." Id. The District Court held further that "[h]aving accepted this limitation, the defendant should not be allowed to enlarge its claim to cover that which had been previously eliminated by amendment." Id. These conclusions rested in large part upon a statement of the patent examiner in rejecting for indefiniteness Shields' penultimate submission, in response to which

Shields made modifications in his specifications which finally resulted in acceptance of the patent:

> "It is not evident from the defined *combination* what cooperative or useful function the contact of the pusher has with the blank stack. The novelty of the invention appears to reside in the vertically movable pusher plate so that the blanks can continuously accumulate while the pusher plate is removing a top portion of the stack." (Emphasis supplied).

 Since the examiner acknowledged that Shields claimed a "combination," we cannot agree that the file wrapper history fairly leads to the conclusion that by accepting the patent on the patent examiner's terms for the sake of definiteness, the applicant had withdrawn its claim to the invention as a combination including elements beside the pusher element. Cf. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). File wrapper estoppel applies only where a claim has been narrowed to avoid prior art, Trio Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66, 75 (3 Cir. 1972), cert. denied, 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1973); and despite his statement that the novelty of Shields' device lay in its pusher, the examiner in fact rejected the fourth submission only for indefinite disclosure.

Our refusal to limit the scope of the patent to the pusher element, however, does not determine the question of either novelty or obviousness. We still must consider the Shields combination patent against the "factual inquiries" to be made under 35 U.S.C. § 103:

> "[T]he scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."

Graham v. John Deere Co., *supra,* 383 U.S. at 17–18, 86 S.Ct. at 694. Since the parties have given us no substantial reason to reverse Judge Costantino's finding that the level of skill in the art of corrugated box machinery design is high, F.R. Civ.P. 52(a), we shall focus on the relationship of the Shields patent to "pertinent" prior art. There were 16 prior art references cited to the examiner, and seven more cited to the court below. Koppers now relies on eight of those references.

The appellant contends that it is entitled to a strong presumption of patent validity, 35 U.S.C. § 282, see Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124, 132–33 (2 Cir.), cert. denied, 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958); Koppers counters that the presumption of validity is undercut because of the applicant's failure to cite controlling art to the Patent Office. E. g. Reeves Bros. Inc. v. United States Laminating Corp., 417 F.2d 869, 872 (2 Cir. 1969). For the purposes of this case, we shall examine the uncited prior art assuming the widest scope of the patent in suit. We need not reexamine Judge Costantino's findings as to possible limitations of the scope of patentability grounded in the doctrine of file wrapper estoppel, see Graham v. John Deere Co., *supra,* 383 U.S. at 24, 86 S.Ct. 684, since we have decided that the prior art is sufficient to dispose of Shields' combination claims.

3. *The Claim in Suit*

In its final form the patent before us describes Claim One of Shields' device as follows:

> "1. A stacking, straightening and delivery mechanism adapted for use with a machine for operating on box blanks, comprising a conveyor operable in synchronism with the said machine to move said blanks in a first, or longi-

tudinal, direction, a device above the conveyor to intercept and accumulate blanks issuing from the machine thereby [1] *forming a blank stack being fed from below,* said device including a pair of plates transverse to the direction of motion of the blanks between which the blanks may be accumulated; one of the said plates abutting the trailing edge of the blanks in the stack and being periodically [2] *reciprocally movable* in a longitudinal direction *to apply a straightening force to the blanks*; an opening under said plate sufficient to permit the entry of at least one blank at a time, and above the upper end of said plates, a longitudinally [3] *movable plate for periodically pushing a top portion of the stack* of said blanks from the said accumulating device and means for supporting the said pusher plate so that it remains in a substantially vertical position when in contact with the said blank stack [4] *said pusher plate being mounted for limited vertical movement relative to the means for supporting the pusher plate, said stack being fed with blanks as the movable plate is removing said top portion from the stack.*"

· It is common ground that the Shields device consists of four essential mechanical elements, as italicized above, and their cooperating relationship. Though Judge Costantino determined on the basis of file wrapper estoppel that he need only examine in detail the pusher element, he alternatively gave general attention to the prior art relevant to the other elements and reached the conclusion that "all elements of defendant's patented device are well known mechanical expedients." 367 F.Supp. at 57. He did not make specific findings regarding prior art with respect to each of the elements on the theory of a combination patent, but since the contention regarding nonobviousness of the whole centers on the pusher element in synchronization with other concededly known elements, it would not be useful to remand for more specific findings on the scope and content of the prior art with respect to the combination. It is to the combination which our attention will be directed.

### 4. The Prior Art

So far as can be determined from references now relied upon by Koppers, the only two references actually in use in the corrugated box manufacturing industry at the time of Shields' invention were Spiess (1953) and Greenwood (1930). Greenwood, a "Stacker for Box Blanks," is conceded by S&S to have anticipated its *understacking* element, and there is no claim that it combines any other elements used in the Shields device. The Spiess patent for a "Glued Flap Box Folding Machine" was uncited by the patent examiner. Spiess was in use in the industry, but is of sufficient dissimilarity to limit Koppers' contention only to its alleged anticipation of Shields' *slapper* element. The Spiess device uses a topfeeding method, its feeder (unlike Shields') actually positioned at a right angle to its straightener. Also unlike Shields, Spiess does not stack box blanks as part of its function.

There is no claim that Greenwood and Spiess, the only two primary references, were alone sufficient to anticipate Shields' entire combination, since neither contained a pusher unit comparable to Shields. If there were other patented devices then used in corrugated box blank processing to perform the functions now performed by Shields (and by the accused Koppers device) they were not cited to us.

Koppers claims that the secondary references which sustain Judge Costantino's finding of obviousness are Evans and Taylor (*in re* the Shields slapper) Sheppard and Hart (*in re* the Shields pusher) and Crank and Kottman (*in re* the vertically movable feature of the Shields pusher plate).

The Evans patent, No. 1,865,308, (1929), not cited in the file wrapper, is for a "Sheet Handling Mechanism," particularly indicated for use in accurately piling "cold rolled metal stacks." The slapper plate on Evans is similar to that

used by Shields although its bottom end pivots from a shaft at its top, rather than having the whole plate move through parallel vertical planes. Evans shows no other element in addition to the slapper plate which might teach the Shields combination, since the stack on which the straightener operates is top-fed, and since it contains no delivery device.

Taylor No. 739,121, (1930), cited by the examiner in his rejection of the second submission, is for a "Paper Jogger" whose intended utility was to straighten stacks of printed sheets as they come off the press. The straightener device on Taylor is more apt than Evans, since it contains a slapper which reciprocates like that on Shields. However, Taylor teaches no means for combination of such a function with any other elements, since straightening a stack top-fed from another device is its only function.

Sheppard No. 2,135,773, (1938), cited in the file wrapper, is entitled a "Mechanical Loader for Loose Materials," designed to be "well adapted to loading coal." Sheppard appears to utilize an equivalent to the Shields pusher in that its pusher-scraper is similarly suspended in a vertical position from bicycle-type chains. The pusher-scraper moves vertically by reason of the similar configuration of the bicycle chains; however, this vertical movement takes place only at the end of its pushing stroke, and is intended only to raise the scraper during the course of its return stroke. It does not have the capability of vertical movement during its pushing stroke, which Shields requires in order to accommodate the blank stack rising from underneath. Obviously, Sheppard also lacks stacking and straightening elements which might teach the Shields combination.

Hart No. 1,344,034, (1920), a "Stacking Mechanism" cited by the examiner in rejecting Shields' third submission, teaches a pushing mechanism used in conjunction with an underfeeding stacker, specifically designed for use "in connection with and constituting a part of die presses or 'dinking machines' in which heel-lifts, shoe soles, or the like, are cut from sheet material." Its pusher is different from Shields', in that it is mounted to a piston adjacent to the rising stack, rather than suspended by bicycle chains above the stack. It does teach a combination of pusher and underfeeding stacker, but it has no similar straightener. Its stacker and pusher function independently, not in synchronization to permit simultaneous performance of both tasks. Shields asserted in this respect, in response to the examiner's third rejection, that the Hart pusher operates "intermittently," as opposed to "periodically."

The Crank patent, No. 2,607,283, (1952), not a part of the file wrapper, claims on a device for "Popping of Corn." There is obviously no stacking or straightening necessary to such an operation, and the claim Koppers makes is that the pusher used by Crank to circulate unpopped kernels and popped corn in a circular pan anticipates the vertical movement capability of Shields' pusher plate. The pusher plate in Crank is attached to an arm which extends from a shaft in the center of the pan. It rotates around the popping pan, and is mounted loosely to the arm in order to allow the pusher plate to accommodate varying levels of the bottom of the pan.

Kottman No. 2,631,716, (1953), also not cited by the examiner, is a patent for an "Endless Freight Conveyor," which was "particularly designed for transferring sliced loaves of bread from the runway of a slicing machine to the infeed mechanism of a wrapping machine." Kottman has a pushing element designed to adjust to varying levels of a conveyor belt along which loaves are moved. The pusher in Kottman is suspended above the conveyor belt from a support plate which extends over the width of the belt. A stacker or straightener is not used in combination with the Kottman patent.

Koppers evaluation of this prior art is the heart of the argument on validity:

"The only difference between the subject matter of Claim 1 and the prior art is that four well-known elements have been combined in a single device wherein the elements function

in the same manner as was known in the prior art and produce the same expected results."

## 5. Obviousness

■ Although there is no serious dispute with Koppers' premise that all of Shields' elements appear in some form in prior art, this argument falls slightly short of the mark because the fact that each of its elements may be anticipated by prior art does not preclude patentability of a novel and nonobvious *combination*. See Trio Process Corp. v. L. Goldstein's Sons, Inc., *supra*, 461 F.2d at 73. The inquiry to be made is whether the combination produces a nonobvious "synergistic result," Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), in which the "whole in some way exceeds the sum of its parts", A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950); 1 Walker on Patents, § 71 at 331 (2d Deller Ed. 1964).

We are satisfied that the Shields device, read broadly, accomplishes no such result. " . . . [T]o those skilled in the art the use of the old elements in combination was not an invention by the obvious-nonobvious standard." Anderson's-Black Rock, Inc., *supra*, 396 U.S. at 62–63, 90 S.Ct. at 309.

S&S claims that the synergistic result of Shields' device lies in the fact that "prior art does not teach the use of an underfed stack of glued boxes to serve as a machine element that applies pressure to maintain the integrity of the glue joints of boxes in the stack and to prevent those box panels which are being slapped into alignment, from springing back to prior misaligned positions between slaps of the oscillating plate forming the rear boundary for the stacker." We cannot accept this argument. In the first place, this particular utility of the combination, though adverted to in the specifications, is not mentioned in the claims, see A. & P. Tea Co., *supra*, 340

U.S. at 149, 71 S.Ct. 127; and the specifications in fact suggest that the device is designed to process unglued as well as glued box blanks. More importantly, assuming such a result to be within the claim, we could not agree that it constitutes a patentable improvement over prior art. Id., 340 U.S. at 150, 71 S.Ct. 127. The Spiess patent, a primary reference in use at the time Shields developed his device, had as one of its objects "to provide an improved means for squaring a folded glued flap box blank." This function was served by a "reciprocating blade," functionally the same as Shields' slapper plate. In this respect Shields is only different from Spiess in that the underfed blank stack itself provides pressure to keep the blanks in proper alignment, whereas in Spiess, "[t]he proper pressure for completing the adhesion . . . is obtained by means of a floating pressure belt." This cannot provide the "synergistic result" for which Shields struggles, however, because the use of the underfed blank stack for this purpose is an obvious expedient of the basic Greenwood understacker described above—also in use in the industry when Shields devised his machine. Focussing on these two elements and primary references alone, we have no doubt that a mechanic skilled in the art would have found Spiess' straightener obviously adaptable to Greenwood's understacker to produce what S&S now claims is an unexpected result.

We also cannot accept the assertion that the addition of the Shields pusher unit makes any substantial difference which would not have been obvious to a skilled machinery designer. The Hart patent teaches a combination of an underfeeding stacker with a pusher which delivers units from the top of the stack. Shields has added a vertically movable pusher plate and suspended it by a set of bicycle-type chains, which allows efficient simultaneous performance of several results previously requiring disjointed steps.[2] Cf. Lemelson v. Topper Corp.,

---

2. Of the four elements of Shields' device, this is the only one which might give pause as to its individual novelty. The patent examiner concluded that this element provides novelty

450 F.2d 845, 848 (2 Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972). But this falls short of the "unusual or surprising consequences [resulting] from the unification of [old] elements" which are necessary to sustain a combination patent against the "rather severe test" of obviousness. A. & P. Tea Co., *supra,* 340 U.S. at 152, 71 S.Ct. 127. The prior art leaves no room for asserting that the combination of the respective elements was nonobvious.

In determining pertinent prior art, as applied to the vertically movable pusher element, we note that Kottman's bread packing machine, though in a different industry, is functionally like Shields' box stacking machine. Each is part of the larger art of feeding flat items from one process of assembly to another. Cf. St. Germain v. Brunswick, 135 U.S. 227, 10 S.Ct. 822, 34 L.Ed. 122 (1890); In re Christopher, 156 F.2d 177, 33 C.C.P.A. 1175 (1946). In any event, packing devices are in a relatively close art. Even a single element drawn from an arguably dissimilar art may invalidate a combination if its similar function is obviously adaptable to another industry. E. g. Aron v. Manhattan R. Co., 132 U.S. 84, 10 S.Ct. 24, 33 L.Ed. 272 (1889) (patent for opening and closing of gates on a railroad car anticipated by similar devices in arts of venetian blinds and transoms); see Burgess Cellulose Co. v. Wood Flong Corp., 431 F.2d 505, 508–09 (2 Cir. 1970).

But even if we eliminate Kottman and Crank as nonanalogous art remote from the corrugated box industry, once the motive to combine Greenwood with Spiess and Hart is established, the addition of the vertical pusher movement is certainly not a nonobvious improvement of the pusher already supplied by Hart. There was evidence that it was a well-known expedient slidably to mount a

pusher plate on a support plate to allow the pusher plate to move vertically to accommodate a rise in the surface under the pusher plate. Where a new combination "merely embellishes one of the [prior] ingredient elements," it is not patentable. Schaefer Inc. v. Mohawk Cabinet Co., 276 F.2d 204, 207 (2 Cir. 1960) (L. Hand, J.); see Application of Antle, 444 F.2d 1168, 1172, 58 C.C.P.A. 1382 (1971).

The "novel" features of the patented device are the pusher element suspended on a set of bicycle-type chains and the synchronization supplied by an integrated system of belts connecting all elements to the drive gear which is driven by the issuing machine. Power is provided to the pusher through the interaction of a series of gears of different ratios coordinated with the drive gear providing a means for selecting the speed at which the pusher moves.

We cannot avoid the conclusion that these relatively simple mechanical expedients were already well known. The particular adaptation of the use of the bicycle-type chain and gears to the known Hart combination of an underfeeding stack and a vertical pusher was novel, but novelty is not to be equated with nonobviousness. Lemelson v. Topper Corp., *supra,* 450 F.2d at 848. We think the device was an adaptation which a mechanic skilled in the use of common bicycle chains, sprocket wheels, and gears could arrange so that a suspended pusher plate would operate in the fashion taught by the patent in suit. We can adopt almost verbatim the language of Justice Stone in rejecting a patent in the same industry, Saranac Automatic Machine Corp. v. Wirebound Patents Co., 282 U.S. 704, 711, 51 S.Ct. 232, 235, 75 L.Ed. 634 (1931):

"All else embodied in the [patent] . . ., we think, involve[s] not invention, but the application of me-

for the Shields' combination, but the Crank and Kottman references were not cited to him. Judge Costantino, with the benefit of expert testimony on this subject, found that the vertically movable pusher was within the skill of an ordinary mechanic in the art. This latter conclusion of obviousness is a matter of law

for appellate review rather than a finding of fact. See Shaw v. E. B. & A. C. Whitney Co., 417 F.2d 1097, 1103 (2 Cir. 1969); Flour City Architectural Metals v. Alphana Alum. Prod. Inc., 454 F.2d 98, 103–06 (8 Cir. 1972). We accordingly review the record to reach an independent conclusion of law.

chanical skill to the solution of the problem of devising suitable mechanical means for the manufacture of foldable box blanks. . . .

" . . . But the solution of that problem was, we think, obvious, involving only the adaptation of familiar mechanical means . . . and requiring no more than the mechanical skill of the calling. . . . "

Finally, we agree with Judge Costantino that appellant's assertion of commercial success is not controlling in light of our determination that the Shields' combination, even broadly read, is obvious under the prior art. Graham v. John Deere, *supra*, 383 U.S. at 17–18, 86 S.Ct. 684; A. & P. Tea Co., *supra*, 340 U.S. at 153, 71 S.Ct. 127; Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2 Cir. 1966).

We conclude that the Shields patent is invalid for obviousness under 35 U.S.C. § 103. In view of this conclusion it is unnecessary for us to consider Koppers' claim that in any event its device does not infringe or S&S's response based on the doctrine of equivalents. An injunction may issue in favor of plaintiff pursuant to the stipulation therefor. See 367 F.Supp. at 56.