**AG PRO, INC., Plaintiff-Appellant,**

v.

**Bernard A. SAKRAIDA, Defendant-Appellee.**

**No. 72–1108.**

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1973.

---

J. Pierre Kolisch, Portland, Or., Frank H. Hunter, El Paso, Tex., for plaintiff-appellant.

J. F. Hulse, El Paso, Tex., for defendant-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

RIVES, Circuit Judge:

Ag Pro, Inc., plaintiff-appellant (hereafter plaintiff), sued Sakraida, defendant-appellee (hereafter defendant), for infringement of the D. J. Gribble, et al. (hereafter Gribble/Bennett) Patent 3,-223,070, titled "Dairy Establishment." On the first hearing the district court granted defendant's motion for summary judgment. This Court reversed and remanded for a trial on the merits. Ag Pro v. Sakraida, 5 Cir., 1971, 437 F.2d 99.

On remand the trial was commenced and completed on the same day. The district court received suggested findings of fact and conclusions of law from both sides, adopted those of the defendant, and adjudged

"* * * that said Patent No. 3,223,070 held by Plaintiff does not constitute invention, is not patentable, and is not a valid patent, it being a combination patent, all of the elements of which are old in the dairy business, long prior to 1963, and the combination of time as described in the said patent being neither new nor meeting the test of non-obviousness, Defendant is entitled to judgment."

(App. 175.)

Having held the patent invalid, the district court did not determine the issue of infringement. We reverse and remand.

The patent is limited to the construction and arrangement of the floor areas of the barn and the means for storing a volume of water on or immediately above the floor so that, when the water is suddenly released, it will clean all of the barn floor areas without the use of hand labor. According to the letters patent, all barn floor areas can be thoroughly cleaned in a very few minutes, where previously it took hours of labor and use of larger quantities of water to achieve an inferior result. The patent contains three claims, but only Claims 1

and 3 [1] are here involved. (App. 18.) In simplified form, those two claims call for a dairy barn having the following elements:

1) A paved, sloped barn floor with downhill drains;

2) individual cow stalls elevated above floor level but designed to facilitate accumulation of cow excrement on the dairy floor;

3) paved feeding and milking areas integrated into the flush system;

4) a dam which collects water in a pool uphill from or directly on the dairy floor and abruptly openable to send a sheet of water cascading through the dairy sweeping the manure to the downhill drains.

Admittedly, all the elements are old. However, prior to this patent, the concept of a controlled sheet of water to do the scouring and washing of the floor had not been used in barn construction. The prior art involved the use of spot delivery of water by high pressure hoses. None of the prior art documents shows a floor washing means constructed to collect a pool of water uphill from or on the floor so that, when the water is abruptly released, it will flow as a sheet to wash almost instantaneously all barn floor areas and discharge cow offal into drains. That is the crucial element of this patent.

The plaintiff's patent is a modest commercial success. Over 70 dairies spanning the United States now utilize the patented manure flush system. Each installation is licensed under the patent pursuant to a one-payment, standard fee of $1500.00 plus $1.00 per cow. (App. 190, 191.)

■ A valid patent must be, not only novel and useful, but also nonobvious. 35 U.S.C. § 103. While the ultimate question of patent validity is one of law, a determination of nonobviousness rests on several basic factual inquiries. Those inquiries, prompted by § 103, are three in number.

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."

Graham v. John Deere Co., 1966, 383 U. S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545.

The crucial issue of obviousness can only be resolved through reference to the precise facts presented, not through

1. "Claim 1. A dairy barn for cows and the like including a smooth, evenly contoured paved surface forming a floor providing a walking surface for cows in the barn, drain means for draining wash water from such floor opening to the top of the floor, said smooth, evenly contoured surface which forms such floor sloping toward said drain means whereby wash water discharged on the floor may be collected and disposed of through said drain means, said barn further including multiple rest areas with individual stalls for each cow and with each of said stalls having a bottom which is also of smooth pavement, but which is disposed at an elevation above the paved surface forming the floor, said stalls being dimensioned so that a cow can comfortably stand or lie in the stall, but offal from the cow falls outside the stall bottom and onto the floor providing the walking surface in the barn, said barn further including defined feeding areas having feeding troughs with means for discharging feed to the troughs, a cow-holding area, a milking area and a transfer area all bottomed with the walking surface forming said floor in the barn; and floor-washing means for washing the floor providing the walking surface in the barn where said floor bottoms said feeding, holding, milking and transfer areas operable to send wash water flowing over the floor with such water washing any cow offal thereon into said drain means, said floor-washing means including means located over a region of said floor which is uphill from said drain means constructed to collect water as a pool above said floor and operable after such collection of water as a pool to disperse the water as a sheet of water over said floor."

"Claim 3. The barn of claim 1, wherein said floor-washing means comprises a dam for damming and collecting water as a pool directly on the floor, and such dam is abruptly openable to send such water as a sheet over the floor toward said drain means." (App. 89, 90.)

logical or intuitive analysis distorted by the invention's simplicity and retrospective self-evidence.

In the instant case, plaintiff presented cogent and convincing evidence that the gap between its patented system and the prior art was wide and ultimately bridged only by the inventive powers of Gribble and Bennett. In contrast, defendant did not supplement the prior art references initially available to the Patent Office, nor did he cite examples of simultaneous solutions. Instead, he merely relied upon three conclusory affidavits and the testimony of one witness who admitted that no similar device existed in the prior art. (App. 246.)

A short sketch of the evidence available to the trial court will highlight the lopsided factual foundation on which the determination of the patent's validity must rest.

(1) *Evidence Presented by Defendant*

While considering the Gribble/Bennett patent application in 1963, the Patent Office examiner had before him nine prior art patents and two prior art publications. Defendant introduced into evidence the two publications and only five of the patents. (Def. Exhibits 2, 3, 4, 5, 6, 7 and 8.) No other specific example of the prior art was revealed by defendant at trial.

Instead, defendant's meager presentation consisted of three cursory affidavits attached to the original motion for summary judgment and the solitary testimony of Mr. Robert Price at trial.

The three affiants, Sakraida, W. C. Fairbanks and Archie Sharp, each swore to have knowledge of prior flush systems analogous to the Ag Pro patent, and each volunteered the subjective judgment that appellant's invention was obvious. (App. 91–102.) These simplistic statements, rendered without the aid of cross-examination and devoid of specific illustrations of similar inventions, add little to an understanding of the prior art.

Defendant's single trial witness, Mr. Robert Price, who runs a dairy in El Paso, Texas, testified that certain elements of appellant's patented invention were known to the prior art, specifically, paved, sloped floors with downhill drains and raised stalls. (App. 239–249.) Yet, Mr. Price admitted that the patented dam-release flooding technique was novel even to him.

(2) *Evidence Presented by Plaintiff*

In contrast to defendant's paltry factual presentation, plaintiff developed a full and lucid view of both the prior art and its own inventive "breakthrough." Plaintiff skillfully juxtaposed the prevalent pre-1963 cleaning techniques with its own flush system and painted a convincing picture of a nonobvious advance.

Plaintiff supplemented its vivid documentary evidence, including picture brochures, magazine articles and a short film strip, with the testimony of George Huber, a retired agricultural engineer from the University of Oregon. Mr. Huber, properly qualified as an expert witness, provided the only technical analysis of the prior art. Mr. Huber carefully examined each of the five patents and two articles cited by defendant as representative of the prior art.[2] He

2. Mr. Huber's scrutinization of defendant's prior art references appears in the Appendix at pages 268 to 272 and includes the following findings:
   (1) The magazine article proffered by Sakraida, "Cattle Shelters and Equipment for South Carolina," Extension Agricultural Engineering Handbook No. 2 (82), merely describes a dairy barn floor plan and does not discuss cleaning procedures.

(2) Defendant's second publication, "The Way Cow's Will Be Milked on Your Farm Tomorrow" by Babson Brothers Dairy Research Service, describes loose housing which requires either scraping or pressure hosing of manure.
   (3) The Luks Patent, No. 1,968,564 (1934) deals with a movable milking apparatus with gutters and drains, but no dam.
   (4) The Kreutzer Patent, No. 1,981,417 is a combination animal housing-feeding

came to the same conclusion previously reached by the Patent Office—none of defendant's prior art references anticipated plaintiff's invention.

■ The Supreme Court held in Graham v. John Deere, *supra*, 383 U.S. at 19, 86 S.Ct. 684, that 35 U.S.C. § 103, passed in 1952, merely codified pre-existing requirements and did not relax the standard for patentability. As early as 1851, in Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683, the Supreme Court posited the condition that a patentable invention must evidence more ingenuity and skill than that possessed by an ordinary mechanic acquainted with the business. That basic standard remains intact. Section 103 simply substitutes the term "nonobvious" for prior terms such as "invention" and "ingenuity" in order to emphasize the objective nature of the test and avoid the misunderstanding stemming from the controversial phrase "flash of creative genius" coined in Cuno Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

■■ Thus, novelty, utility and wide commercial success are not enough to assure patentability. A combination is unpatentable, notwithstanding novelty and usefulness, if it is, in view of the prior art, an obvious expedient of a skilled worker in the art. See Deller's Walker on Patents, 2nd ed., § 71, p. 333. Hence, where the defendant in a combination patent infringement suit offers references to the prior art to negate patentability, those references may not be combined to anticipate the patented claim unless they suggest to one with ordinary skill in the art doing what the applicant has claimed.

None of the prior art references proffered by defendant in this case, inde-

pendently or combined, suggest that plaintiff's novel flooding mechanism was an obvious advancement in the art. To the contrary, the record reveals that those skilled in the art reacted to the advancement with surprise (see App. 208; 266). Different evidence referring to truly analogous prior patents or simultaneous solutions might have compelled a finding of obviousness, but this record is devoid of such evidence.

Certainly, the gravitational principle that water runs downhill is both old and obvious; yet, plaintiff does not seek to patent gravity. Instead, plaintiff strives to acquire official recognition of its rights in a precise combination of mechanical components capable of harnessing a sudden rush of water to effectively clean a modern dairy barn. The prior art did not mother this audacious device; Gribble and Bennett's inventive faculties did.

The clearly erroneous standard of review is applicable to findings of fact in a patent case. See F.R.Civ.P. Rule 52; Railex Corp. v. Speed Check Co., 5 Cir. 1972, 457 F.2d 1040; American Seating Co. v. Southeastern Metals Co., 5 Cir. 1969, 412 F.2d 756, 758. Although this Court has viewed with disfavor a trial judge's uncritically accepting proposed findings, this unfortunate practice does not erase the clearly erroneous rule. Louis Dreyfus & CIE. v. Panama Canal Co., 5 Cir. 1962, 298 F.2d 733.

■ Anticipation of the contested patent by prior art structures is largely a question of fact, but the critical issue of nonobviousness requires a mixed factual-legal determination. Laitram Corp. v. Deepsouth Packing Co., 5 Cir. 1971, 443 F.2d 928, 932; Anderson's Black Rock, Inc. v. Pavement Salvage Co., 1969, 396 U.S. 57, 90 S.Ct. 305, 24 L. Ed.2d 258.

structure, but does not embrace cleaning procedures at all.

(5) The Kreutzer Patent, No. 1,981,418, also, does not involve barn cleaning.

(6) The McCornack Patent, No. 2,081,947 is a cleaning system based on gutters

and a system of water pipes, not a dam-release system.

(7) The Bogert Patent, No. 2,233,766 utilizes a sprinkler system, again distinct from plaintiff's patent.

In the instant case, the district judge did not specifically find that the patent was anticipated by prior art structures. (See App. 164–177.) He did conclude that plaintiff's invention was obvious, and, as a mixed factual-legal determination, that conclusion must be given strong credence by this Court. But the facts presented at trial clearly do not support a finding of obviousness under the three-pronged *Graham* test, and, even under the strictures of a limited standard of review, this Court must reverse.

### The Presumption of Patent Validity

■ A patent is presumed valid and the burden of establishing its invalidity rests on the party asserting it. See 35 U.S.C. § 282. Although the presumption of patent validity is rebuttable, Radio Corp. of America v. Radio Engineering Labs, 1934, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, the quantum of proof needed to rebut that presumption is greater than a mere preponderance of the evidence. Hobbs v. United States, 5 Cir. 1971, 451 F.2d 849, 856; Railex Corp. v. Speed Check, *supra*, 457 F.2d at 1040.

■ If it can be demonstrated that the Patent Office was not shown or did not consider additional pertinent prior art, the presumption of validity is weakened. B. F. Goodrich Co. v. Rubber Latex Products, Inc., 6 Cir. 1968, 400 F.2d 401; Stamicarbon, N.V. v. Escambia Chemical Corp., 5 Cir. 1970, 430 F.2d 920. But presentation by defendant of exactly the same prior art references relied on by the Patent Office reinforces, rather than destroys, the presumption of validity. Stamicarbon. N.V. v. Escambia Chemical Corp., *supra* p. 926; Johns-Manville Corp. v. Cement Asbestos Products Co., 5 Cir. 1970, 428 F.2d 1381.

Accordingly, this Court has seen fit to override the statutory presumption of patent validity where previously undisclosed references to analogous prior art structures are revealed at trial, Ramirez v. Perez, 5 Cir. 1972, 457 F.2d 267; see also Graham v. John Deere, *su-*

*pra*, 383 U.S. at 26, 86 S.Ct. 684, but the circumstances in this case compel a contrary result.

At trial, defendant cited only five prior art patents, all of which were previously considered by the Patent Office. Defendant introduced a single witness. That witness' ambiguous testimony, balanced against the impressive array of evidence proffered by plaintiff, failed to rebut the presumption of patent validity. Yet, the district court did not once mention the patent's presumptive validity in its findings of fact and conclusions of law.

### The Requirement of Nonobviousness

The requirements for patentability are primarily statutory. The purpose of the patent laws is "to promote the Progress of * * * useful Arts, by securing for limited Times to * * * Inventors the exclusive Right to their * * * Discoveries." U.S.Const., Art. I, § 8, cl. 8. That purpose is implemented by 35 U.S.C. § 101, defining a patentable invention as one that is both new and useful, and § 103 further requiring that,

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in § 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

The concept of nonobviousness is elusive. The patentability of any given invention can only be determined by applying general principles gleaned from relevant cases to the specific facts involved, with a constant eye on the constitutional purpose of the patent laws.

In the first Supreme Court case interpreting section 103, Graham v. John Deere, *supra*, the Court held two separate patents unpatentable. The first, an asserted advancement in plow shank de-

sign, was found to be substantially identical to a prior patent, not considered by the Patent Office, whose parts were simply inverted. The second structure, a plastic finger sprayer with "holddown" cap, lacked the requisite nonobviousness, because the advancement rested upon an "exceedingly small and quite non-technical mechanical difference[s] in a device which was old in the art." *Graham, supra,* 383 U.S. at 36, 86 S.Ct. at 703. Although the Court in *Graham* clearly rejected the Fifth Circuit rationale that an invention is patentable when it produces an "old result in a cheaper and otherwise more advantageous way," what precise test, if any, that Court substituted is unclear.

Several post-*Graham* cases have emphasized the necessity of a technical improvement and apparently permitted the ultimate issue of patentability to turn on a technical-nontechnical distinction. In United States v. Adams, 1965, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, a new wet cell battery was held patentable, because it constituted a combination which was a specific solution to *technical* problems. *See* Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 5 Cir. 1970, 431 F.2d 539, 542. In *Sterner* a novel lamp-post base design was found patentable under the following test:

> "Whether the patentee has solved *non-trivial technical problems* by purposefully manipulating variables so as to elicit a synergistic result from his materials." [Emphasis supplied.]

■ Other cases, rather than focusing on the technical complexity of the improvement, have stressed the reaction of experts in the art. If noted experts express initial disbelief, that fact is probative of nonobviousness. See United States v. Adams, *supra* p. 52, 86 S.Ct.

708; but see Railex Corp. v. Speed Check Co., *supra,* 457 F.2d at 1045, where an unexpected result was treated as relevant to novelty, not nonobviousness. The concepts are often intertwined.

■ All of the cases agree that considerations of commercial success, long felt but unresolved needs, and failure of other structures to achieve the same results are important secondary factors but not directly determinative of nonobviousness. *Graham, supra,* 383 U.S. at 17, 86 S.Ct. 684.

Although the plaintiff's flush system does not embrace a complicated technical improvement, it does achieve a synergistic result through a novel combination. The Gribble/Bennett invention involves far more than a mere inversion of parts and the problem solved was not trivial. The little expert testimony presented at trial supports the conclusion that the system was initially viewed with disbelief. The inventors did not take a common structure and make a minor change like the tortilla maker in Ramirez v. Perez, *supra,* who merely removed the studs from a waffle iron. Instead, they constructed a totally new structure (although admittedly out of old parts) and achieved a dramatic result. If a mechanic reasonably skilled in the applicable art could have anticipated this result, the record does not show it.

■ On the basis of the record before us, we reverse the judgment of the district court and find that the patent is valid. The case is remanded for a determination of the issue of infringement, and for such further proceedings as may be appropriate, consistent with this opinion.

Reversed and remanded.