**Thomas G. CARTER, Jr.**

v.

**Sam RICE and Donald W. RICE.**

**Civ. A. No. 4-2137.**

United States District Court,
N. D. Texas,
Fort Worth Division.

July 29, 1975.

R. A. Gritta, Fort Worth, Tex., for plaintiff.

Robert A. Felsman, Wofford, Felsman & Fails, Patent Attys., Fort Worth, Tex., for defendants.

MEMORANDUM OPINION

MAHON, District Judge.

Thomas G. Carter brought this suit as owner of a patent entitled "Positive Clutch", the subject matter of which concerns the high speed gear of certain motor vehicle transmissions.[1] Mr. Carter alleges infringement and seeks an accounting for the period of defendants' alleged wrongful use. Defendants admit use of a device which falls within the scope of the patent but challenge its validity. They additionally assert intentional fraud in obtaining the patent by reason of deliberate failure to disclose pertinent art to the patent office and resulting anti-trust violations. 15 U.S.C. § 2.

The subject matter of the patent is for the purpose of preventing certain Chevrolet standard transmissions from jumping out of gear into neutral while under load. The patented device consists of a main drive shaft which has external helical splines or flutes and a clutch sleeve or synchronizing drum which has corresponding internal

1. United States Letters Patent No. 3,220,522.

splines. The synchronizing drum telescopes over the main drive, meshing the external splines on the drive with the internal splines on the drum. When driving, an axial thrust tends to push the synchronizing drum off the shaft. It was found that there often was not enough counter balancing thrust in the shifting linkage to restrain the drum and consequently the transmission would jump out of gear. The problem is particularly acute when the gears have been worn. The patented device remedies this difficulty. Worn main drive shafts and synchronizing drums are "ground" or cut so they will latch together when operating. A notch or flute is ground on each external spline on the main drive shaft creating a slight hook on the end of each spline. A peripheral groove is ground through each internal spline of the synchronizing drum. When meshed, the hook on the external spline extends slightly into the groove and under operational stress, rests against the shoulder of the groove. The axial thrust which caused the synchronizing drum to push away is now transmitted to the shoulder and thus the gear mechanism remains in place.

■ As previously noted, defendants admit that their patent reads on plaintiff's device and that if the patent is valid then they have infringed. Their principal attack on the patent's validity is by prior use, more than one year prior to the patent application, of material, which is the subject matter of the patent. Such prior use will, of course, invalidate the patent. 35 U.S.C. § 102(b).

The significant dates to consider for this prior use contention are:

| | |
|---|---|
| 1959–60 | Defendants claim they began grinding main drive shaft |
| 1961 | Defendants claim they began grinding synchronizing drum. |
| February 14, 1963 | One year prior to date of plaintiff's application |
| February 14, 1964 | Plaintiff files patent application |
| November 30, 1965 | Patent granted. |

■ Defendants' burden in showing invalidity by prior use is normally a heavy one. Defendants must overcome the rebuttable presumption of validity given to a patent issued by the patent office. *Radio Corporation of America v. Radio Engineering Labs*, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163 (1934). 35 U.S.C. § 282. There are three reasons however, why I conclude defendants have met this burden. Initially, I am convinced that defendants simply offered sufficient and credible evidence to rebut the presumption of validity. Second, I believe that the presumption of validity which attaches to a patent was greatly weakened in this case. If it can be shown that the patent office was not shown or did not consider additional prior art then the presumption of validity is weakened if not destroyed. *Ag Pro, Inc. v. Sakraida*, 474 F.2d 167 (5th Cir. 1973); *Stamicarbon, N. V. v. Escambia Chemical Corporation*, 430 F.2d 920 (5th Cir. 1970). I believe defendant made such a showing. Third, I conclude that the subject matter of plaintiff's patent was obvious as a matter of law.

■ Where the presumption of validity has not been weakened, proving prior use one year or more before a patent application is difficult. Oral testimony alone, is inherently suspect where there is such a challenge. As the Supreme Court observed:

" . . . In view of the unsatisfactory character of such [oral] testimo-

ny, arising from the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence and to demand that it be subjected to the closest scrutiny." *The Barbed Wire Patent*, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. (1891).

The Fifth Circuit has held that prior use must be proved beyond a reasonable doubt and has noted that as a practical matter, oral testimony alone, without supporting written documents, fails to show prior use as a matter of law.[2] *Zachos v. Sherwin-Williams Company*, 177 F.2d 762, 763 (5th Cir. 1949).

Defendants offered their own testimony as well as that of others to show prior use. As corroboration, they offered sales receipts from their business records to come within the "supported by writings" rule. *Zachos v. Sherwin-Wil-*

liams Company, supra. Plaintiff contests the sufficiency of the sales receipts and asserts that they do not adequately bolster the oral testimony of defendants' witnesses. The Fifth Circuit considered an analogous situation in *Kiva Corporation v. Baker Oil Tools, Inc.*, 412 F.2d 546 (5th Cir. 1969). In *Kiva*, the Court held job tickets prepared by a third party to be sufficient corroboration for his testimony. The important factors were that the witness was disinterested and that

> ". . . He was not imagining that he invented the tools. His testimony was neither contradicted nor impeached. Indeed, it was not disputed. His testimony is not improbable on its face. There is nothing to indicate that he was a perjurer. The jury believed his testimony. Therefore, we believe the job tickets as so identified were "writings" in compliance with *Zachos. . ."

*Kiva Corporation v. Baker Oil Tools, Inc.*, 412 F.2d 546, 552 (5th Cir. 1969).

In the case *sub judice*, the documentary evidence supporting the oral testimony consists of receipts prepared by defendants or other persons in their normal course of business. I do not believe that this fact, taken alone, discredits them completely. Aside from their being prepared in the regular course of business, they pertained to events which concerned disinterested persons who in turn testified as to the transactions referenced. The oral testimony substantially meshed with the sales receipts. There is no evidence to cause the Court to believe that the receipts were not authentic or did not accurately relate to actual events about which witnesses clearly and convincingly testified.[3]

---

2. There have been different articulations of a party's burden of proof in establishing invalidity. *Zachos v. Sherwin-Williams Co., supra*, indicates beyond a reasonable doubt standard. Another way of stating the burden is to say evidence of prior use must be "clear and convincing". *Cf. Metal Arts Co. v. Fuller Co.*, 389 F.2d 319 (5th Cir. 1968).

In any event, it is clear that the quantum of proof is much greater than by a mere preponderance of the evidence. *Hobbs v. United States*, 451 F.2d 849 (5th Cir. 1971).

3. The Court in *Kiva Corp. v. Baker Oil Tools, Inc., supra*, at 553, agreed that the District Court is ". . . not required to discard

■ The Court considers two witnesses to be especially important to defendants' case. They were Mr. Winfield and Mr. Pack.[4] Mr. Winfield related that he had purchased both cut and uncut gears, i. e., main drive shafts and synchronizing drums from a certain L. J. Foley in the years 1961 to 1963. Receipts showing sales in this period from Mr. Foley to the witnesses business are in evidence.[5] Mr. Lonnie Pack, testified as to purchasing ground main drive and synchronizing drums from defendants in 1961. An invoice dated 6–19–61 to a certain "Pack & Phillips" corroborates at least one such sale. Mr. Pack's testimony was clear and convincing as to what he was purchasing, the circumstances surrounding the purchase and the year of such purchase. He was able to tie the date down by reference to his rebuilding a certain race driver's automobile engine for a race which was held in 1961. No doubt exists in my mind as to the use by this witness of ground main drives and synchronizing drums, which he purchased from defendants in 1961. There were other witnesses who testified for defendants in addition to Winfield and Pack. The Court, initially, in its deliberation, discounted their testimony because of their interestedness in varying degrees to the subject matter of this litigation. This interestedness ranged from the aforementioned Foley, who also, claimed invention of the gear device to a former employee of defendants' who said he performed the actual grinding prior to 1963. Considering all testimony, the Court views their assertions as corroborative of the disinterested testimony of Winfield and Pack. Such clear and convincing testimony cannot be disregarded. *Whiteman v. Mathews*, 216 F.2d 712, 716 (9th Cir. 1954). There is no essential variation in the presentation of the facts concerning the time of defendants' activity of grinding both main shaft drives and synchronizing drums since 1961 and main drive shafts alone since prior to that time. All essential testimony on this point was supported in some measure by receipts either from defendants or L. J. Foley. The Court has no reason to doubt either the testimony or the authenticity of the receipts.

■ The evidence overwhelmingly shows that defendants were grinding gear devices in some manner prior to 1963.[6] The real question in the Court's mind was merely whether they were in fact grinding both the main drive and synchronizing drum prior to 1963. I have found that they were. Accordingly, I conclude that defendants have met their burden and have shown beyond a reasonable doubt that plaintiff's device was in prior use more than one year prior to February 1964. This burden has been met even holding defendants to the strict standard of proof. However, this measure need not be applied because the evidence shows that the prior art of admittedly similar scope was not presented to or considered by the patent office. Plaintiff in no way showed the contrary and accordingly the presumption normally given a patent must give way. Seen without benefit of the presumption, defendants' case is greatly enhanced and

credible testimony because it is oral and deals with events and circumstances long past . . . ," citing with approval *Whiteman v. Mathews*, 216 F.2d 712 (9th Cir. 1954). The evidence in this case, taken as a whole, admits of no other finding except that of prior use.

4. These two witnesses fit squarely within the *Kiva* standards. They were both disinterested. They were not imagining that they invented the device. Their testimony was essentially uncontradicted and unimpeached. It was not improbable on its face. *Kiva Corp. v. Baker Oil Tools, Inc., supra*, at 552.

5. L. J. Foley testified that he also began grinding gears similar to plaintiffs prior to 1963 and that he had in fact sold said devices to third persons including the witness Winfield.

6. Most of the receipts cover the years 1961–62. The oral testimony, uncontradicted, is that defendants were grinding the main drive shaft since 1959 and began grinding the synchronizing drum in 1961.

the patent's validity is further compromised. *Ag Pro, Inc. v. Sakraida*, 474 F. 2d 167 (5th Cir. 1973).

 There is yet another reason, why I believe the patent is invalid. This is because I conclude that the subject matter of the patent was obvious at the time the patent application was filed. The strongest evidence in this case shows defendants and others, grinding the main drive shaft for some time prior to 1963. There can be no doubt of this. I did not consider for purposes of prior use whether this use alone, that is, of only the main drive shaft constituted sufficient prior use to invalidate it under 35 U.S.C. § 102(b). Rather, my focus is that use of the ground main drive shaft to prevent the gear from jumping out, made plaintiff's device obvious in the light of prior art. Examining the device for obviousness, I note that ". . . while the ultimate question of obviousness is one of law, . . . this issue nevertheless lends itself to the following basic factual inquiries: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the art." *Gaddis v. Calgon Corporation*, 506 F.2d 880, 884 (5th Cir. 1975). Here, the credible evidence shows prior art to include a main drive shaft. The purpose of such grinding was the same as declared in plaintiff's patent. The scope is the same. I find the differences between the way plaintiff grinds his main drive and defendants' grinding to be of no moment. There is little if any distinction. The level of ordinary skill in the art is widespread. There is ample testimony showing several individuals concerned with the high speed gear jumping-out problem and making attempts remedying the difficulty. Considering all these factors, I conclude that in February 1964, the subject matter sought to be patented, *i.e.*, grinding gear elements, was obvious to a person having

ordinary skill in the art. *Cf. White v. Mar-bel, Inc.*, 509 F.2d 287 (5th Cir. 1975).

 Considering defendants' counterclaim under the Sherman Act, the Court is persuaded that defendants have failed to establish that plaintiff willfully and deliberately failed to disclose pertinent art to the patent office.[7] *Cf. Walker Process Equipment, Inc. v. Food Machinery and Chemical Corporation*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Alternatively, the Court is convinced of the patentee's good faith in the prosecution of his patent application in 1964.

The above constitutes findings of fact and conclusions of law in this matter. Defendants' counsel will submit an order for judgment consistent with this opinion within twenty days of entry.

---

7. Defendants did not even clear this first hurdle, much less did they make out the other elements necessary to show violation of the Sherman Act.