**REPUBLIC INDUSTRIES, INC.,**
**Plaintiff,**

v.

**SCHLAGE LOCK COMPANY, Defendant.**

No. P–CIV–76–0017.

United States District Court,
S. D. Illinois, N. D.

July 5, 1977.

Donald G. Beste, Peoria, Ill., William E. Lucas and John K. Lucas, Jacob L. Fox, Robert A. McGrath, Chicago, Ill., for plaintiff.

Tim Swain, II, Peoria, Ill., Henry L. Brinks and Richard G. Lione, Chicago, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

Plaintiff is the assignee of Slaybaugh Patent No. 3,852,846, which relates to a door holder-closer. It alleges that the Slaybaugh invention achieves a unique combination of two functions in a single unit, namely, multi-point hold-open[1] and monetary manual release.[2]

Defendant, through its LCN Division at Princeton, Illinois, in this district, manufactures and sells a door holder-closer which is alleged to infringe Claims 8 and 9 of the Slaybaugh patent. Defendant has filed a counterclaim for a declaratory judgment that the patent is invalid under 35 U.S.C. § 103, or, if the same be valid, not infringed by the accused device.

The invention claimed in Claim 8 is a combination of components comprised of a door-closing spring, a piston activated by such spring which operates within an enclosed cylinder, hydraulic fluid within the cylinder, a fluid escape passage to the right of the piston, a valve which closes such fluid escape passage, and a solenoid which exerts a pressure upon the valve sufficient to close the valve and maintain it in closed position and thus overcome the opposed force of the closing spring. In its commercial embodiment, the plaintiff's unit is completely encapsulated, with the solenoid chamber behind the valve being also filled with hydraulic fluid under low pressure.[3] As the door is opened to any desired position, the closing spring is depressed, with the force thus created being counteracted by the solenoid force closing the valve, thus preventing fluid interposed between the piston and the valve from escaping. The door remains open so long as the differential between the opposed forces of the spring and the solenoid remains constant.

The self-closing function of the device is activated by a manual push of the door. The force thereof, in conjunction with the force of the pent closing spring, activates the closing gear mechanism to force the piston toward the valve. The forces, in combination, are sufficient to overcome the solenoid and unseat the valve. The piston forces the high-pressure fluid interposed between the piston face and the valve seat past the valve through the escape passage to the low-pressure side of the piston. The valve is constructed with a projected face area which is larger than the area of its seat, which permits the pressure created in the fluid by the movement of the piston toward the valve seat to continue to overpower the solenoid to such degree that the valve remains open to evacuate the high-pressure fluid from the chamber at a restricted rate until the door reaches full closure and the pressure within the unit is equalized at its low ebb.[4]

---

1. The device holds a door open at any point along the arc between its closed position and its fully-opened position.

2. With the door in any opened position, a manual push on the door will override the hold-open feature, permitting the door to close automatically following the impetus of that overriding force.

3. Other claims of the patent, not here in issue, specifically relate to the concept of encapsulation. The parties take diametrically opposed positions upon the question whether encapsulation is a necessary limitation of Claim 8, and of Claim 9 which is dependent on 8.

4. Claim 8 claims as invention:

"A combined door check and door hold open device including resilient means for urging a door toward closure upon expansion thereof, means defining a hydraulic cylinder, a piston therein connected to move toward one end of said cylinder with the expansion of said resilient means, said resilient means establishing a pressure per unit area on fluid ahead of said piston, means associated with said one end of said cylinder defining a passage for the escape of fluid from said one end having a valve seat therein, a valve adapted to close against said valve seat from the downstream side thereof, said valve having a face larger than said valve seat, a valve chamber downstream of said seat,

As the plaintiff conceives its claim of invention in its trial brief:

"This unique dual function * * * is the result of several factors. First, the force of the main closing spring, the area of the valve seat, the entire projected area of the valve face and the force exerted by the solenoid are so proportioned, within disclosed and claimed ranges, that once the valve opens, the fluid pressure acting on the entire face area develops a force greater than the opposing solenoid force. The valve must be closely contained within its chamber to allow a sufficient pressure drop across the valve, when it is open, to enable the valve to overpower the solenoid. Second, the restricted escape passage * * * maintains this pressure drop across the open valve and allows the door to close slowly as the high pressure fluid escapes."

It summarizes its position as to the inventive concept of the patent as a "new combination" of basic elements comprising seven elements, namely, "a door-closing main spring, a piston which slides in a cylinder, hydraulic fluid in the cylinder ahead of the piston, a fluid escape passage from the high-pressure end of the cylinder, a closely-contained, dual-area valve which closes the fluid escape passage, and a solenoid * * which exerts a force upon the valve to close it." Parenthetically, plaintiff adds, in this

*a portion of said valve downstream of said face closely contained in said chamber to substantially prevent fluid flow past said valve and allow a pressure drop across said valve when said valve is open,* means providing a fluid escape passage opening into said valve chamber upstream of said valve face at an open position of said valve, *means providing a fluid escape from said valve chamber behind said closely contained portion of said valve when in said open position, and* means adapted to hold said valve resiliently against said seat with a force in excess of the product of said pressure and said valve seat area and less than the product of said pressure and said face area."

The emphasized language of the claim was added by a third amendment to the application, with significance hereinafter noted in proper context.

Claim 9, which is dependent, reads:

"The combination of claim 8 wherein said means for resiliently holding said valve are electrically operated."

context, that, "of course, there must be a drain behind the valve to insure free valve movement, since accumulation of fluid behind the valve would block its movement."

That parenthetical statement forms one crux of this controversy as it relates to both the question of validity and the question of infringement. Defendant correctly contends that if the parenthetical element is omitted from the recitation of essential elements of the claim, plaintiff is attempting to reclaim a position which it abandoned in the prosecution of the patent application. The file wrapper reveals that the examiner rejected a claim encompassing plaintiff's seven elements as unpatentable over the Martin patent.[5] In response to that rejection, Slaybaugh redrafted his claim to add the limitation, *inter alia,* of a means providing a fluid escape passage from the valve chamber behind the valve when the valve is in its open position.[6] Thus, that limitation is an essential element of the claimed invention.[7] Plaintiff cannot now construe the claim to avoid that limitation and recapture a monopoly which it abandoned in order to overcome the rejection of its original claim. *Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 137, 62 S.Ct. 513, 86 L.Ed. 736 (1942); *Keating v. Stearnes Imperial Co.,* 347 F.2d 444, 447 (7th Cir. 1965).[8]

---

5. Martin Patent No. 3,696,462.

6. The language of the claim, as emphasized in note 4, *supra,* was added as further limitations in response to the action of the examiner rejecting Slaybaugh's claim. As so amended, the claim was then allowed as Claim 8 of the issued patent.

7. It is not deemed necessary to further determine whether the "means for fluid escape" limitation in the claim necessarily implies encapsulation, as defendant argues. As hereinafter concluded, the claim must be invalidated irrespective of its interpretation.

8. It is axiomatic that an invention must be measured by the patent claim itself. *E. g., General Electric Co. v. Wabash Appliance Corp.,* 304 U.S. 364, 369, 58 S.Ct. 899, 82 L.Ed. 1402 (1938).

## Validity

The presentation of each party is largely geared to application of the subject evaluation required of lay jurists of the several elements set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), to guide the determination whether a patent is nonobvious and valid under the provisions of Section 103.[9] Scant attention is paid to the effect of the concept of synergism, which first found articulation in *Anderson's-Black Rock v. Pavement Co.*, 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

■ Time will, hopefully, demonstrate the effect engrafted upon the patent law of the term "synergism," which emerged in *Black Rock*.[10] Pending that demonstration by time, this court must determine whether the synergistic concept has engrafted upon the body of patent law a new test which must be applied when it is contended that a combination claim is an obvious extension of the art within the intendment of Section 103.

At least as early as 1950, there appears a hint as to the synergistic concept. In *A. & P. Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950), the Court said that a claim might create a monopoly in the combination of old elements only if the whole in some way exceeds the sum of its several component parts. What that means is rather nebulous, though the statement was, in intervening years, construed to require only the achievement of some striking result which answered a long-felt need in the particular art. Nineteen years were to elapse before the term "synergism" emerged. *Anderson's-Black Rock v. Pavement Co., supra.*

*Black Rock* involved a claim comprised of the combination of a radiant-heat burner, a bituminous paving machine, and an asphalt shaper apparatus mounted on the same chassis. The combination was designed to achieve a weathertight joinder of lanes of bituminous pavement laid, consecutively, the one beside the other. The function of the burner was to heat the cold joint inherent in the paved lane first laid, in order that the bituminous material comprising the abutting second lane would readily adhere to achieve a bonding between the two. All three elements were old in the art. The patentee's contribution was the combining of the three elements into a single paving machine.

In holding the claim invalid, because the combination would have been obvious to persons skilled in the art, the Court said that the combination did not produce a new or different result, *ibid.* 396 U.S. at 60, 90 S.Ct. 305, and it did not satisfy the standards for nonobviousness established by the *Deere* decision. *Id.* at 61–63, 90 S.Ct. 305. In the context of that exposition, the Court said:

> "A combination of elements may result in an effect greater than the sum of the several effects taken separately. No such synergistic result is argued here. It is, however, fervently argued that the combination filled a long felt want and has achieved commercial success. But those matters 'without invention will not make patentability.'" *Id.* at 61, 90 S.Ct. at 308, citing *A. & P., supra.*

Thus, *Black Rock* does not appear to be subject to an interpretation of having established a new test for obviousness under Section 103. In the context of the Court's discussing and applying the requirements of *Deere,* the quoted passage seems merely to note the advent of a phenomenon which may emanate from a combination claim,

---

**9.** Those elements are the examination of the scope and content of the prior art, the distinction from the prior art evinced by the patent, and the level of ordinary skill which existed in the prior art. 383 U.S. at 17, 86 S.Ct. 684.

**10.** The term, which derives from Latin, had its genesis in theology, medicine and physiology. Webster's New Twentieth Century Dictionary,

Unabridged, 2nd Edition. Depending upon its context of usage, the term may either mean merely the interaction of two agencies or the simultaneous action of two agencies, which together produce a total effect greater than the sum of their individual effects. *Black Rock* employed the term in the second concept of its meaning.

without any indication by the Court that the phenomenon must be present in every case to satisfy the requirements of Section 103. What the opinion seems to reiterate is the requirement that the combination of old elements must rise above the ministrations of the skilled artisan and achieve an inventive concept which had eluded others. In essence, the Court held that it was not invention to pick up, bodily, a radiant-heat burner, which theretofore had been used to heat asphalt to achieve adherence, and place it upon the front of a chassis with the already appended paver and shaper.

However, that decision has led to conflicting interpretations in the several appellate courts. The most articulate analysis of *Black Rock* appears in *Application of Fielder,* 471 F.2d 640, 644–645 (C.C.P.A.1973), in which the court construed that decision as a reaffirmation of *Deere,* not as a deviation from the *Deere* criteria. Other courts have expressly adopted the same view; *e. g., Reeves Instrument Corp. v. Beckman Instruments, Inc.,* 444 F.2d 263, 271–272 (9th Cir. 1971), *cert. denied,* 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268, or have indicated their adherence to that position merely by citing *Black Rock* as supportive of the *Deere* criteria. *E. G., Rutter v. Williams,* 541 F.2d 878, 881 (10th Cir. 1976); *Norwood v. Ehrenreich Photo-Optical Indus., Inc.,* 529 F.2d 3 (9th Cir. 1975); *United States Expansion Bolt Co. v. Jordan Industries, Inc.,* 488 F.2d 566, 568 (3d Cir. 1973).

On the other hand, *Black Rock* has been interpreted as establishing a new criteria for nonobviousness. In *Sterner Lighting,*

*Inc. v. Allied Electrical Supply Co., Inc.,* 431 F.2d 539, 542 (5th Cir. 1970), the court, citing *Black Rock,* said that the question of obviousness is "whether the patentee has solved nontrivial technical problems by purposefully manipulating variables so as to elicit a synergistic effect from his materials." Historically, other courts have adopted that interpretation.[11]

*Ag Pro, Inc. v. Sakraida,* 474 F.2d 167 (5th Cir. 1973), led to the next reference by the Supreme Court to the concept of synergism. The patent in that suit involved the combination of a graded floor, flush troughs, and a means for storing water for a flood-effect release onto the floor to remove animal wastes from a dairy barn. The trial court found that the combination would have been obvious to persons skilled in the art and entered judgment invalidating the claim. Citing *Sterner,* the Court of Appeals reversed, saying, "Although the plaintiff's flush system does not embrace a complicated technical improvement, it does achieve a synergistic result through a novel combination." *Ibid.* at 173. Reversing the Court of Appeals, the Supreme Court quoted the above conclusion, saying:

"We cannot agree that the combination of these old elements to produce an abrupt release of water directly on the barn floor from storage tanks or pools can properly be characterized as synergistic * * *. Rather, this patent simply arranges old elements with each performing the same function it had been known to perform, although perhaps producing a more striking result than in previous

11. *E. g., Parker v. Motorola, Inc.,* 524 F.2d 518, 531–532 (5th Cir. 1975), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (a combination of old elements is patentable only if it produces a synergistic effect); *Ingersoll-Rand Company v. Brunner & Lay, Inc.,* 474 F.2d 491, 496 (5th Cir. 1973), *cert. denied,* 414 U.S. 865, 94 S.Ct. 125, 38 L.Ed.2d 117 (the patent "produced the synergistic result which must obtain when combinations of old elements are brought together" in a new combination); *Koppers Co., Inc. v. S & S Corrugated Paper Machinery Co., Inc.,* 517 F.2d 1182, 1188 (2d Cir. 1975) (the inquiry must be whether the combination produces a synergistic result in which the result in some way exceeds the sum of its parts); *Phil-*

*ips Industries, Inc. v. State Stove & Mfg. Co., Inc.,* 522 F.2d 1137, 1141 (6th Cir. 1975) (the concept of synergistic result has evolved to determine what constitutes the key requirement of patentability); *International Telephone & Telegraph Corp. v. Raychem Corp.,* 538 F.2d 453, 457 (1st Cir. 1976) (one standard of patentability, over the defense of obviousness, is that the effect created by the new combination is greater than the sum of the several effects of its various elements); *Bolkcom v. Carborundum Company,* 523 F.2d 492, 500 (6th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (to be patentable a "new invention must be more than the sum of its old parts.").

combinations." *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976).

As is the case with the *Black Rock* reference, it is far from clear that *Sakraida* approved the principle that "synergistic effect" is the guiding criteria of nonobviousness. The Court did not so state. It simply refuted the existence of synergistic effect in the particular combination with which it was there concerned. Pertinently, the Court did state that a patent which only combines old elements with no change in their respective functions would withdraw into the veil of its monopoly resources which are a part of the public domain and ought to remain available to the skilled practitioner in a particular art. It also admonished all courts to scrutinize combination claims with a care proportioned to the difficulty and improbability of finding invention in a combination of old elements. *Ibid.* at 281, 96 S.Ct. 1532.

During the same term, the Court stated that the mere existence of differences between the prior art and a claimed invention must be a result so striking that it would not have been obvious to one skilled in the art. *Dann v. Johnston*, 425 U.S. 219, 230, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976).

The above historic background of the synergistic concept in patent law is a prelude to the court's consideration of the law as it has devolved in the Seventh Circuit in the historic interim. In *Pederson v. Stewart-Warner Corp.*, 536 F.2d 1179, 1181 (7th Cir. 1976), the court said that simply rearranging old elements "with each performing the same function it had been known to perform" is not a patentable combination, even though the combination does produce a more striking result. (Citing *Sakraida.*) In a recent opinion reversing a decision by this court,[12] the court said:

" * * * The Supreme Court has recently indicated that section 103 cannot easily be satisfied by inventions that re-

arrange old elements in new combinations with each element performing the same function it performed in the prior art, even though the new combination produces a more striking result. (Citing *Sakraida.*) Unless the combination is synergistic * * * it cannot be patented." *St. Regis Paper Co. v. Bemis Co., Inc.*, 549 F.2d 833, 838 (7th Cir. 1977).[13]

In view of the apparent ambivalence of *Black Rock, Sakraida,* and *Dann, St. Regis* is the controlling precedent which must guide the resolution of the question of validity here and now. The issue of validity thus depends upon the factual demonstration that the Slaybaugh elements, in the combination claimed, do achieve some effect greater than the sum of the effects of the several elements taken separately.

In this context, plaintiff contents itself with the statement:

"The elements of the Slaybaugh invention in suit cooperate to achieve a new, different and unexpected result never realized before, namely, multi-point hold open and manual release. The Slaybaugh combination of elements is synergistic because it results in an effect greater than the sum of the several effects taken separately. (Citing *Black Rock.*) None of the several individual elements can achieve this dual function outside of the Slaybaugh combination."

That thesis is concluded by its statement that *St. Regis* is clearly distinguishable because the Slaybaugh combination is synergistic.

Plaintiff's thesis runs counter to the test which *St. Regis* imposes. Synergistic effect cannot be measured by the results achieved by the combination.

*St. Regis* involved three patents related to the art of multi-ply, gusseted, pinch-bottom bags. The first claimed the process of stepping the gusset portion, in the manu-

**12.** *St. Regis Paper Co. v. Bemis Co., Inc.*, 403 F.Supp. 776 (S.D.Ill.1975).

**13.** *Compare, e. g., Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517, 523 (7th Cir.

1971), stating that a combination of elements which produce a new and useful result or substantial increase in efficiency is patentable.

facture of the bag, above the front wall and the stepping of the rear wall above the gusset portion. The other two patents taught the stepping of each of the plies in the gusset portion above the ply which preceded it in the total structure, and the stepping of each ply in the back wall in like manner, each above the other. The object of each of the claimed inventions was the achievement of a sift-proof seal when the bag was closed.

Upon the evidence adduced in that trial, this court found that the bag industry had been foreclosed from a substantial market potential because existent sealing methods could not achieve a sift-proof, vermin-proof seal; that the parties and others in the field had groped for a solution to that problem for some substantial period of time; that the Lokey concept of stepping the gusset portion above the front wall and the rear wall above the gusset portion did achieve an effective seal which had theretofore eluded practitioners in the art; and that the Goodrich concept of progressively stepping each ply in the gusset above its preceding ply and stepping each ply in the back wall in like manner produced the effect of sealing each of the several plies of the structure, upon closing the bag, to the front wall of the bag was a patentable advance over the Lokey patent.[14] Its decision holding the patents to be valid was reversed because the combinations produced no synergistic effect; i. e., each element merely produced the effect which the prior art demonstrated that it would produce. The combinations were adjudged not patentable, despite the fact that they did produce a result for which the industry had striven for a substantial period of time, and a result which was a substantial advance in the art. It must be concluded, therefore, that the production of a desirable and useful end result is insignificant if evidence reveals that the combined effect of the several elements in a claimed combination is merely equal to the sum of the several effects of those elements.

■ Applying that standard, claims 8 and 9 of the Slaybaugh patent must be adjudged invalid under Section 103. The closing spring, the plunger, the gearing, the hydraulic cylinder, the valve seat, the valve and the solenoid, which combine to achieve multi-point hold open, were all old in the prior art. Slaybaugh's contribution was the adjustment of those several known elements and of the several forces inherent therein in such manner that the combination would hold a door open at any given point along its arc. Each element functions in the same manner which the prior art taught and produces the same effect which the prior art revealed that it would produce. In no sense can the combination be found to achieve a synergistic effect.

To the above combination Slaybaugh added a type of valve construction which is not shown to have previously been used in the door-closer art. The projected face area of that valve, which exceeds the area of the valve seat, permits the hydraulic pressure upon the larger projected valve face to continue to overpower the solenoid after the valve is opened until the door achieves its closed position, despite the decrease in fluid pressure as the fluid escapes past the open valve.

That valve structure was also disclosed by pertinent prior art.[15] The employment of a differential in the areas of a valve face, i. e., the total valve face area being larger than the area of the valve seat in hydraulic systems, was explained at least as early as 1945.[16] That article explained that once pressure is exerted on the valve face sufficient to overcome the force of the seating spring and permit the valve to open, the effect of the fluid pressure upon the greater valve area thus exposed by the valve's

14. Note 12, *supra.*

15. Although the valve structure is not shown to have been employed in the door-closer art prior to Slaybaugh's embodiment, it is revealed and described in the art related to hydraulic systems generally. Of necessity, a practitioner in the closer art must have had a knowledge of hydraulics and a skill in the various arts in which hydraulics is employed.

16. Basic Hydraulics, 1945.

opening would serve to continue to hold the valve open, despite the force of the spring, until the reduction of pressure by the escape of fluid achieved the desired pressure in a hydraulic system. That concept is embodied in several patents related to hydraulic-fluid escape valves.[17] Although the valves described in those several patents are variant in their structure and precise mode of operation, each taught the employment of a differential in face area as a means to equalize or retain a predetermined fluid pressure in a hydraulic system. Thus, what Slaybaugh did was to apply the teachings of that related art to a new purpose. The valve achieves the same function and effect in that new embodiment which the art fully described.

Plaintiff does not seriously argue that the Slaybaugh valve is distinctive from those described in the Prijatal patent and related art. What it does contend is that Prijatal, et al., are not pertinent prior art, because those references related to pressure-relief valves, not to the door-closer art. It argues that the devices described are "dump" valves, designed only to maintain pressure within a system at a desired level as an end in itself. The crux of its argument is that the application of the same structure, which operated in the same way and achieves the same function, to achieve the different end result of closing a door, rises to the posture of invention.[18]

The court must find that it should have been obvious to practitioners in the door-closer art that the retention of the valve in its open posture, once it had been opened by manual force, until the fluid within the unit had achieved an equalized pressure, was the key to momentary manual release. It would have been equally obvious that a valve structure of the Prijatal type would achieve that purpose.[19]

The court finds that each element of the Slaybaugh combination merely produces the effect which the prior art taught that it would produce. It is not a synergistic advance in the art to combine those elements to achieve a new result, however desirable, or striking the result achieved. The combination of a Prijatal-type valve with a modification of the Martin-type components must be construed as an advancement in the art which would have been obvious to the skilled practitioner.[20]

### Defendant's Claim for Attorneys' Fees

Defendant invokes the provisions of 35 U.C.S. § 285, praying a judgment that it is entitled to recover its reasonable attorneys' fees.[21] It argues that Slaybaugh had knowledge of the prior art, as exemplified by the Prijatal patent, which taught the differential area valve effect in hydraulic systems, yet he argued to the examiner that the prior art which the examiner did consider did not contain that teaching; that Slaybaugh also falsely asserted to the ex-

17. Prijatal Patent No. 2,980,132; Parker Patent No. 2,431,769; Hubbard Patent No. 3,117,321.

18. In the context of that argument, plaintiff ignores the fact that the examiner initially rejected the claim, without consideration of the Prijatal, et al., references, as an obvious extension of the teachings of Martin.

19. In early December, 1972, Slaybaugh was assigned the task of designing a structure which would achieve momentary manual release. He then had knowledge of the Prijatal-type valve for use in hydraulic systems. Within days thereafter, he had designed a modification of one of plaintiff's commercial devices by, *inter alia,* adopting the differential valve-face structure. The patent in suit resulted from that effort.

20. No discussion or evaluation of the evidence related to secondary indicia of nonobviousness

is deemed necessary in the context of this decision. That category of evidence includes a licensing agreement between plaintiff and Eaton Corporation. That exhibit, which is before the court *in camera,* was a part of the settlement of a patent infringement suit by plaintiff against Eaton. It is apt to note, without further evaluation, that Eaton substantially copied the structure of plaintiff's commercial product, and the suit against Eaton alleged infringement of claims of Slaybaugh not here in issue. Hence, one must question any evidentiary value of that exhibit as supportive of the validity of Claims 8 and 9 in suit.

21. In exceptional cases, a court may award attorneys' fees to the prevailing party. 35 U.S.C. § 285.

aminer that the prior art did not disclose the internal drain means which he added as a limitation to his claim to obtain its allowance; and that plaintiff could not have reasonably believed that Slaybaugh Claims 8 and 9 are valid, if those claims are construed to read on the embodiment of the accused device.

■ Defendant relies upon the principle that the bad-faith withholding of information from the Patent Office, though not legally fraudulent, will sustain an award of attorneys' fees to a prevailing party. *E. g., Super Products Corp. v. D P Way*, 546 F.2d 748 (7th Cir. 1976); *Shelco, Inc. v. Dow Chemical Co.*, 466 F.2d 613, 618 (7th Cir. 1972); *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 294 (9th Cir. 1969).

■ The demand for attorneys' fees in a patent case invokes a sound discretion. Although the content of the file wrapper, in the light of the trial record, may tend to indicate a certain lack of candor on Slaybaugh's part in the proceedings before the Patent Office, the court is not convinced that the evidentiary facts would warrant a judgment that this is an exceptional case which requires the award of attorneys' fees. There does exist an arguable basis for the positions which plaintiff has taken in the course of the prosecution of its patent application and the filing of this suit. A review of reported patent litigation in the usual case, i. e., the race between corporate competitors in a particular art for ascendancy in the pertinent market over their competitors, tends to reflect some pattern of various degrees of what might be called overreaching. One can conclude that a particular case is not exceptional without, necessarily, condoning the prevailing practice. It is apparent that there is a legitimately arguable basis to support the plaintiff's position at each stage. Thus, this record does not reflect the degree of flagrant delict which should lead a trial court to invoke the provisions of Section 285 and award attorneys' fees to the prevailing party.

*Additional Findings and Conclusions*

1. The court does have jurisdiction.

2. All statements in the above exposition which partake of the quality of factual statements are so found, and all statements which partake of the quality of conclusions of law are so concluded.

3. In addition to the prior art references which were considered by the examiner, the hydraulic-system-valve art, as exemplified by Prijatal, et al., is pertinent prior art related to the patent in suit.

4. The combination claimed in Claims 8 and 9 of the patent in suit is not invention over the relevant prior art. Each element in the combination is old in the art, and each such element merely produces the effect which the prior art taught that it would produce. The combined effect of the Slaybaugh combination does not exceed the sum of the several effects of its component parts, taken separately. Those claims, therefore, do not achieve a synergistic effect.

5. Claims 8 and 9 of Slaybaugh Patent No. 3,852,846 are invalid.

6. Factually, this case does not present an exceptional case within the meaning and intendment of Title 35, United States Code, Section 285.

IT IS ORDERED that judgment enter declaring invalid claims 8 and 9 of the patent in suit, the plaintiff to pay all costs of suit.

IT IS FURTHER ORDERED that defendant's demand for the allowance of its attorneys' fees is DENIED.